WAUSAU TILE, INC., a domestic corporation, Plaintiff-Appellant,

v.

COUNTY CONCRETE CORPORATION , a domestic corporation, and American States Ins. Co., a foreign insurance corporation, Defendants,

THE TRAVELERS INDEMNITY CO. , a foreign insurance corporation, and Medusa Corporation, d/b/a Medusa Cement Company, a foreign corporation, Defendants-Respondents.

Supreme Court

*No. 97–2284. Oral argument February 11, 1999.—Decided May 28, 1999.*

(Also reported in 593 N.W.2d 445.)

237

239

For the plaintiff-appellant, there were briefs by *Thomas R. Crone, Dana J. Erlandsen, Devon R. Baumbach* and *Melli, Walker, Pease & Ruhly, S.C.*, Madison and oral argument by *Dana J. Erlandsen.*

For the defendant-respondent, Medusa Corporation, there was a brief by *Keith W. Kostecke* and *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.*, Appleton and oral argument by *Keith W. Kostecke.*

For the defendant-respondent, The Travelers Indemnity Company, there was a brief by *John D. Bird, Jr.,* and *Bird, Martin & Salomon, S.C.*, Milwaukee and oral argument by *John D. Bird, Jr.*

Amicus curiae brief was filed by *Frank A. Scherkenbach, Jeffrey S. Fertl* and *Hinshaw & Culbertson*, Milwaukee for Wisconsin Gas Company.

¶ 1. N. PATRICK CROOKS, J. The court of appeals certified this case pursuant to Wis. Stat. § (Rule) 809.61 (1997–98),[1] asking this court "to determine the nature, extent and scope of the public safety exception to the economic loss doctrine enunciated in *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918,

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

471 N.W.2d 179 (1991)." Certification at 1. We hold that the *Northridge* rule is not applicable to the tort claims alleged in this case. Because the only non-economic loss alleged by Wausau Tile is the personal injury or property damage of third persons, we conclude that Wausau Tile's tort claims are barred by the economic loss doctrine.

## I.

¶ 2. Wausau Tile, Inc. (Wausau Tile) manufactures, sells and distributes "Terra" pavers to entities around the country. Pavers are concrete paving blocks made of cement, aggregate, water, and other materials, for use mainly in exterior walkways. Wausau Tile's pavers have been installed in various locations throughout the nation.

¶ 3. Wausau Tile contracted with Medusa Corporation (Medusa) to supply the cement for the pavers and arranged for County Concrete Corporation (County Concrete) to supply the aggregate.[2] Wausau Tile's contract with Medusa contained warranties providing that Medusa would remedy or replace cement which did not meet particular specifications.[3]

---

[2] It is unclear from the record whether a contract also existed with County Concrete. County Concrete is not a party to this appeal.

[3] The warranty from Medusa to Wausau Tile stated:

**SPECIFICATIONS.** THE CEMENT SHALL CONFORM TO THE PRESENT STANDARD SPECIFICATIONS OF THE AMERICAN SOCIETY FOR TESTING MATERIALS AND/OR THE FEDERAL SPECIFICATIONS. THESE EXPRESS WARRANTIES ARE IN LIEU OF AND EXCLUDE ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ORAL OR STATUTORY, OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. SELLER [Medusa] SHALL REMEDY OR REPLACE, FREE OF CHARGE, ANY CEMENT WHICH

¶ 4. On April 16, 1996, Wausau Tile filed suit in Marathon County Circuit Court against Medusa, County Concrete, and their insurers, alleging breach of warranty, breach of contract, negligence, indemnification, contribution and strict liability claims. Wausau Tile claimed that several of the installed pavers had suffered "excessive expansion, deflecting, curling, cracking and/or buckling." Compl. ¶ 12. Wausau Tile asserted that these problems were caused by alkali-silica gel reactions which resulted from high levels of alkalinity in Medusa's cement and high concentrations of silica in County Concrete's aggregate.

¶ 5. Wausau Tile claimed that the expansion and cracking of the pavers had led to problems and property damages which have given rise to "various claims, demands and suits against Wausau Tile."[4] Compl. ¶ 12. Wausau Tile alleged that it had "sustained mone-

DOES NOT COMPLY WITH THE AFORESAID SPECIFICATIONS AND SHALL HAVE NO FURTHER OBLIGATION OR LIABILITY FOR GENERAL, SPECIAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF A BREACH OF THE AFORESAID EXPRESS WARRANTIES.

Seller, having no control over the use of cement will not, therefore, guarantee finished work in which it is used, nor shall the Seller be responsible for the condition of cement after delivery to Buyer [Wausau Tile]. Any charges incident to inspection or tests made by or on behalf of Buyer to determine compliance with specifications shall be paid by Buyer.

Runde Aff. Ex. B at 2 (emphasis in original).

[4] Wausau Tile's attorney stated at oral argument that Wausau Tile had been presented with three formal personal injury claims and had knowledge of six to twelve personal injury claims that had not yet been filed. As of the date of oral argument, Wausau Tile had not paid out any amounts in satisfaction of personal injury claims, but had paid various sums in connection with property damage claims. In addition, Wausau Tile stated that it had expended money removing and replacing

tary damages in remedying the property damage claims, is facing claims for personal injuries, and has suffered and will continue to suffer lost business and profits." Compl. ¶ 17. In connection with its tort claims, Wausau Tile sought "actual and consequential damages arising from said problems and defects, including, but not limited to, costs of repair, replacement and remedy of any and all defects, complaints and resulting injuries which have arisen or will arise in the future as a result of the use of said pavers." Compl. ¶ 31.

¶ 6. On March 20, 1997, The Travelers Indemnity Company (Travelers), Medusa's insurer, filed a motion to: (1) dismiss Wausau Tile's negligence, indemnification, and contribution claims pursuant to Wis. Stat. § 802.06, for failure to state causes of action against Medusa and Travelers for which relief could be granted;[5] and (2) obtain a summary declaration pursuant to Wis. Stat. § 802.08 that Travelers had no duty to defend Medusa on Wausau Tile's breach of contract and warranty claims. Travelers asked the court to issue an order dismissing Wausau Tile's complaint and all claims asserted against Travelers on their merits.

¶ 7. The circuit court, Judge Vincent K. Howard presiding, granted Travelers' motion. In a written order entered on July 24, 1997, the court dismissed Wausau Tile's negligence and strict liability claims against Medusa with prejudice. In addition, the court

---

problematic pavers in an effort to prevent further injuries and property damage.

[5] The strict liability claim was added in Wausau Tile's Third Amended Complaint. The Third Amended Complaint was filed after Travelers made this motion pursuant to a stipulation of the parties and order of the circuit court. Like the circuit court, we address the allegations contained in the Third Amended Complaint.

entered summary judgment in favor of Travelers, holding that Travelers had no duty to defend Medusa in this case and dismissing on their merits all pleadings asserting a claim against Travelers.

¶ 8. In its memorandum decision, the circuit court determined that Wausau Tile's complaint concerned only the suitability or quality of Medusa's product and that the loss it sought to recover was purely economic. Although Wausau Tile asserted personal injury and property damage in support of its negligence and strict liability claims, the third parties who were the real parties in interest as to those claims were not joined, nor was joinder feasible or necessary for Wausau Tile to litigate the economic loss issues. The court concluded, therefore, that the economic loss doctrine precluded Wausau Tile from maintaining its tort claims against Medusa.

¶ 9. Based on this conclusion, the circuit court held that Travelers had no duty to defend Medusa against Wausau Tile's tort claims. The court found that the Travelers policy[6] covered exclusively claims for bodily injury and property damage. Since the third-party real parties in interest for Wausau Tile's claims of bodily injury and property damage were not joined in the suit, the court held that Travelers had no duty to defend.

¶ 10. As stated previously, the court of appeals certified Wausau Tile's appeal to this court. This court

---

[6] Travelers wrote a total of eight policies for Medusa. The effective date for the first policy was July 1, 1989, and each policy period lasted one year. Because the provisions relevant to the duty to defend issue are the same in each Travelers policy, we will discuss the insurance policies as though only one policy existed.

accepted review of all issues raised before the court of appeals.

## II.

¶ 11. We begin by determining whether the circuit court properly dismissed Wausau Tile's negligence and strict liability claims against Medusa as barred by the economic loss doctrine. "A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the complaint." *Watts v. Watts*, 137 Wis. 2d 506, 512, 405 N.W.2d 305 (1987). *See also Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 331, 565 N.W.2d 94 (1997). Whether the complaint states a claim for relief is a question of law which this court reviews *de novo*. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 400, 573 N.W.2d 842 (1998); *Watts*, 137 Wis. 2d at 512. For purposes of review, we must accept the facts stated in the complaint, along with all reasonable inferences which may be drawn from them, as true. *Watts*, 137 Wis. 2d at 512. *See also Northridge*, 162 Wis. 2d at 923–24. Unless it seems certain that no relief could be granted under any set of facts that the plaintiff could prove, dismissal of the complaint is improper. *Northridge*, 162 Wis. 2d at 923; *Watts*, 137 Wis. 2d at 512.

## A.

¶ 12. The economic loss doctrine precludes a purchaser of a product from employing negligence or strict liability theories to recover from the product's manu-

facturer loss which is solely economic.[7] *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 921, 437 N.W.2d 213 (1989). *See also East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870–71 (1986); *Daanen*, 216 Wis. 2d at 400; *Northridge*, 162 Wis. 2d at 925. Economic loss is the loss in a product's value which occurs because the product "is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Northridge*, 162 Wis. 2d at 925–26. *See also Daanen*, 216 Wis. 2d at 401.

¶ 13. Economic loss may be either direct or consequential. *Daanen*, 216 Wis. 2d at 401; *Northridge*, 162 Wis. 2d at 926. Direct economic loss is "loss in value of the product itself." *Daanen*, 216 Wis. 2d at 401 (citing Steven R. Swanson, *The Citadel Survives a Naval Bombardment: A Policy Analysis of the Economic Loss Doctrine*, 12 Tul. Mar. L.J. 135, 140 (1987) [hereinafter "Swanson"]). All other economic loss caused by the product defect, such as lost profits, is consequential economic loss. *Daanen*, 216 Wis. 2d at 401; *Northridge*, 162 Wis. 2d at 926; Swanson at 140.

---

[7] *Sunnyslope Grading, Inc. v. Miller Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 921, 437 N.W.2d 213 (1989), applies the economic loss doctrine in a commercial setting, as do many of the other cases cited in this opinion. Recently, in *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 353, 354, 592 N.W.2d 198 (1999), and *General Cas. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 311, 592 N.W.2d 201 (1999), this court held that the economic loss doctrine applies with equal force to consumer transactions. Nothing in this opinion should be interpreted as limiting the holdings in *State Farm* and *General Casualty*.

¶ 14. The economic loss doctrine does not preclude a product purchaser's claims of personal injury or damage to property other than the product itself. *Daanen*, 216 Wis. 2d at 402; *Northridge*, 162 Wis. 2d at 937; *Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.*, 151 Wis. 2d 431, 438, 444 N.W.2d 743 (Ct. App. 1989). Similarly, claims which allege economic loss in combination with non-economic loss are not barred by the doctrine. *Daanen*, 216 Wis. 2d at 402. "In short, economic loss is damage to a product itself or monetary loss caused by the defective product, which does not cause personal injury or damage to other property." *Id.* at 402.

¶ 15. In *Daanen*, this court identified three policies supporting the application of the economic loss doctrine to commercial transactions. *Id.* at 403. First, the economic loss doctrine preserves the fundamental distinction between tort law and contract law. *Id.* Second, application of the doctrine protects the parties' freedom to allocate economic risk by contract. *Id.* Third, the doctrine encourages the purchaser, which is the party best situated to assess the risk of economic loss, to assume, allocate, or insure against that risk. *Id.*

¶ 16. The first of these policies recognizes that contract law rests on bargained-for obligations, while tort law is based on legal obligations. *See id.* at 404; *Northridge*, 162 Wis. 2d at 933; E. Allan Farnsworth, *Contracts* §§ 1.1-.3, at 3–10 (2d ed. 1990). In contract law, the parties' duties arise from the terms of their particular agreement; the goal is to hold parties to that agreement so that each receives the benefit of his or her bargain. *Daanen*, 216 Wis. 2d at 404; *Sunnyslope*, 148

247

Wis. 2d at 916. *See also* Swanson at 158. The aim of tort law, in contrast, is to protect people from misfortunes which are unexpected and overwhelming. *East River*, 476 U.S. at 871. The law imposes tort duties upon manufacturers to protect society's interest in safety from the physical harm or personal injury which may result from defective products. *Daanen*, 216 Wis. 2d at 405; *Northridge*, 162 Wis. 2d at 933. Thus, where a product fails in its intended use and injures only itself, thereby causing only economic damages to the purchaser, "the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *East River*, 476 U.S. at 871. *See also Daanen*, 216 Wis. 2d at 405.

¶ 17. In this case, the damages sought by Wausau Tile can be grouped into three categories: (1) the costs of repairing and replacing cracked, buckled or expanded pavers; (2) the costs of satisfying third parties' claims that the defective pavers either caused personal injury or damaged property adjoining the pavers, such as curbs, mortar beds and walls; and (3) lost profits and business. We consider each of these types of damages in turn.

¶ 18. Repair and replacement costs are typical measures of economic loss. *See East River*, 476 U.S. at 870; *Miller v. United States Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990) (applying Wisconsin law); *Northridge*, 162 Wis. 2d at 931. However, it is not the measure of damages which determines whether a claim alleges solely economic loss. *Northridge*, 162 Wis. 2d at 931–32. Physical harm to property other than the product itself may also be measured by the cost of repair or replacement of the product. *Id.* at 932. Consequently, we must determine whether Wausau Tile has

alleged repair or replacement costs as a measure of harm to property other than the defective product.

¶ 19. Wausau Tile argues that the costs of repairing and replacing the pavers do not constitute economic loss because the pavers themselves are property other than the defective product (Medusa's cement). We are not persuaded by that argument.

¶ 20. Damage by a defective component of an integrated system to either the system as a whole or other system components is not damage to "other property" which precludes the application of the economic loss doctrine. *See East River*, 476 U.S. at 867–68; *Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft*, 849 F. Supp. 666, 671–72 (E.D. Wis. 1994) (applying Wisconsin law); *Cincinnati Ins. Co. v. AM Int'l*, 224 Wis. 2d 456, 463, 591 N.W.2d 869 (Ct. App. 1999); *Midwhey Powder Co., Inc. v. Clayton Indus.*, 157 Wis. 2d 585, 590–91, 460 N.W.2d 426 (Ct. App. 1990). Comment e of the Restatement (Third) of Torts § 21 acknowledges this "integrated system" rule. It states, in part:

> A defective product that causes harm to property other than the defective product itself is governed by the rules of this Restatement. What constitutes harm to other property rather than harm to the product itself may be difficult to determine. A product that nondangerously fails to function due to a product defect has clearly caused harm only to itself. A product that fails to function and causes harm to surrounding property has clearly caused harm to other property. However, when a component part of a machine or a system destroys the rest of the machine or system, the characterization process becomes more difficult. *When the product or system is deemed to be an integrated whole, courts treat such damage as harm to the product itself.*

249

> *When so characterized, the damage is excluded from
> the coverage of this Restatement.* A contrary holding
> would require a finding of property damage in virtu-
> ally every case in which a product harms itself and
> would prevent contractual rules from serving their
> legitimate function in governing commercial
> transactions.

Restatement (Third) of Torts § 21 cmt. e (1997)
(emphasis added).

¶ 21. Likewise, the United States Supreme
Court has recognized that courts have interpreted the
Supreme Court's decision in *East River* as standing for
the proposition that when harm results from a defec-
tive component of a product, the product itself is
deemed to have caused the harm. *Saratoga Fishing Co.
v. J.M. Martinac & Co.*, 520 U.S. 875, 883 (1997). In
emphasizing that its holding in *Saratoga* did not affect
this rule, the Court quoted *East River*'s explanation of
the rule's importance:

> Since all but the very simplest of machines have
> component parts, [a holding that a component of a
> machine was "other property"] would require a find-
> ing of "property damage" in virtually every case
> where a product damages itself. Such a holding
> would eliminate the distinction between warranty
> and strict products liability.

*Id.* (quoting *East River*, 476 U.S. at 867)).[8] Other juris-
dictions also apply some form of the "integrated

---

[8] In *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S.
875, 878, 884 (1997), the United States Supreme Court held
that the economic loss doctrine did not preclude a second user's
claim of damages for equipment added to a ship by the initial
user, when a defective component purchased and installed by
the ship manufacturer caused the ship to fail. The Court con-

system" rule. *See, e.g., Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc.*, 620 So. 2d 1244, 1247 (Fla. 1993); *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 58 (Ill. 1997).[9]

¶ 22. In the instant case, it is undisputed that the pavers were integrated systems comprised of several component materials, including Medusa's cement. *See* Compl. ¶¶ 7–9. The circuit court determined that Medusa's "concrete is an indistinguishable, integral part of the pavers" which "cannot be separately identified from the finished product." Summary Judg. Dec., June 25, 1997 at 10–11 (No. 96-CV–187). Other courts have held that various substances incorporated into finished products constitute integral components of those products. *See, e.g., Casa Clara*, 620 So. 2d at 1247 (Fla. 1993) (holding that defective concrete became an integral part of homes purchased by the plaintiff such that the homes were not "other property"). Because the inference that Medusa's cement was an integral component of the pavers reasonably follows from the facts alleged in the complaint, we must regard it as true. *See Northridge*, 162 Wis. 2d at 923; *Watts*, 137 Wis. 2d at 512. Accordingly, we reject Wausau Tile's contention

---

cluded that the added equipment was "other property" under the rule of *East River* and that the ship, as placed in the stream of commerce by the manufacturer, constituted the "product itself." *Id.* at 879.

[9] The Restatement of Torts and the jurisprudence of other state and federal courts have guided the development of the economic loss doctrine in Wisconsin from its inception. *See, e.g., Daanen*, 216 Wis. 2d at 403–11; *Northridge*, 162 Wis. 2d at 924; *Sunnyslope*, 148 Wis. 2d at 920–21.

251

that the pavers constitute property other than the defective cement.[10]

¶ 23. We conclude that the crux of Wausau Tile's claim for repair and replacement costs is that the pavers were damaged because one or more of their

---

[10] Wausau Tile argues that the *Midwhey* "integrated system" rule set forth in *Midwhey Powder Co., Inc. v. Clayton Industries*, 157 Wis. 2d 585, 590–91, 460 N.W.2d 426 (Ct. App. 1990), may only be applied when a purchaser buys an entire integrated system which later turns out to have a defective component. Wausau Tile contends that the rule does not apply in this case because Wausau Tile bought only the component (the cement), not the integrated system (the pavers).

In a similar vein, Wausau Tile argues that it is in the position of the "initial user" in *Saratoga Fishing*. Therefore, Wausau Tile reasons, under the rule of *Saratoga Fishing*, the aggregate, water, and other materials it added to the product it purchased (the cement) constitutes "other property" for purposes of the economic loss doctrine.

Both of these arguments fail in light of the fact we determine elsewhere in this opinion that Wausau Tile is not the real party in interest as to the tort claims it asserts. Wausau Tile is akin to the ship manufacturer in *Saratoga Fishing*, not the "initial user." *See Saratoga Fishing*, 520 U.S. at 878. *See also Broan Mfg. Co. v. Westinghouse Elec. Corp.*, 597 F. Supp. 435, 436 (E.D. Wis. 1984) (citing *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 582 F. Supp. 208 (E.D. Wis. 1984)) (dismissing a plaintiff manufacturer's tort claims against a defendant component supplier on the ground that tort claims are premised on duties owed to *consumers*). The complete packages purchased by the "initial users" in this case were the pavers manufactured by Wausau Tile, which contained cement as one of their components. If the proper parties were to bring the tort claims Wausau Tile is attempting to assert, the damage to the pavers would be damage to the "product itself" even under Wausau Tile's formulation of the *Midwhey* rule.

ingredients was of insufficient quality and did not work for Wausau Tile's intended purpose. This is the essence of a claim for economic loss. *See Northridge*, 162 Wis. 2d at 937; *Sunnyslope*, 148 Wis. 2d at 916. *See also D'Huyvetter v. A.O. Smith Harvestore Prod.*, 164 Wis. 2d 306, 328, 475 N.W.2d 587 (Ct. App. 1991).

¶ 24. Second, Wausau Tile claims damages in the amounts it expended, or anticipates that it will expend, in remediation of third parties' claims of damage to property adjoining the pavers and pedestrians' claims of personal injury. These claims do not allege any personal injury or property damages on Wausau Tile's part. Rather, as Wausau Tile acknowledges in its brief, these claims are an attempt to recoup the commercial costs of settling the claims of third parties which resulted from the product defect. *See* Wausau Tile's Br. at 20. As such, the claims allege consequential economic loss. *See Daanen*, 216 Wis. 2d at 401.

¶ 25. Moreover, even if Wausau Tile's claims were sufficient to allege personal injury and/or property damage, it would not be permitted to litigate those claims because it would not be a real party in interest and, as will be discussed later in this opinion, joinder of the real parties in interest would not be feasible. *See* Wis. Stat. § 803.01(1).[11] A real party in interest is "one who has a right to control and receive the fruits of the litigation." *Mortgage Assocs., Inc. v. Monona Shores,*

---

[11] Wis. Stat. § 803.01(1) states:

**(1)** REAL PARTY IN INTEREST. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

*Inc.*, 47 Wis. 2d 171, 179, 177 N.W.2d 340 (1970); *Schwartz v. Evangelical Deaconess Soc'y*, 46 Wis. 2d 432, 442, 175 N.W.2d 225 (1970). The basic test is whether the plaintiff's suit will prevent the defendant from being harassed by other claimants for the same demand, whether it will preclude the defendant from asserting any fair defense, offset, or counterclaim, and whether the defendant will be fully protected when the judgment in behalf of the plaintiff is discharged. *Mortgage Assocs.*, 47 Wis. 2d at 179; *State ex rel. State Bar v. Bonded Collections*, 36 Wis. 2d 643, 651–52, 154 N.W.2d 250 (1967).

¶ 26. We agree with the circuit court that Wausau Tile would not be a real party in interest in regard to any claims of personal injury or property damage.[12] All property allegedly damaged is owned by third parties not joined in this suit. Similarly, third parties, not Wausau Tile, sustained any personal injury which may have occurred. Wausau Tile is arguably one of the parties responsible for harm caused by the defective pavers. As such, it is clear that Wausau Tile has no right to control the litigation or receive the fruits of any claims of harm to person or property. Further, because injured third parties may bring their own claims against Medusa, recovery for personal injury or

---

[12] Wausau Tile also does not meet the criteria which would allow it to pursue claims on behalf of those who are real parties in interest as a representative under Wis. Stat. § 803.01(2). Wis. Stat. § 803.01(2) provides:

> **(2)** REPRESENTATIVES. A personal representative, executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in the party's name without joining the person for whose benefit the action is brought.

property damage by Wausau Tile would not save Medusa from further harassment for the same harm. In sum, the third parties, not Wausau Tile, are the real parties in interest for any claims of personal injury or property damage. Other courts have rejected similar attempts by plaintiffs to escape application of the economic loss doctrine by accompanying their allegations of economic loss with claims of property damage or personal injury suffered by third parties not joined in the suit. *See Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft*, 849 F. Supp. 666, 672 (E.D. Wis. 1994)(holding, under Wisconsin law, that neither the owner/operator of a defective helicopter nor its insurer could recover in tort the cost of claims asserted against them by third-party owners of property damaged when the helicopter crashed, when the third-party owners were not parties to the suit); *Washington Courte Condominium Assoc.-Four v. Washington-Golf Corp.*, 501 N.E.2d 1290, 1294 (Ill. App. 1986) (holding that injuries sustained by a third party not joined in the action did not constitute "personal injury" which would allow plaintiffs to avoid the application of the economic loss doctrine).[13]

---

[13] Contrary to Wausau Tile's assertions, the fact that Wausau Tile actually incurred expenses in remedying property damage and repairing faulty pavers does not distinguish this case from *Midwest Helicopters*. Wausau Tile voluntarily incurred the costs it did when it chose to take on the responsibility of remediating the damage to the pavers and other property of third parties. It is possible that Wausau Tile assumed the duty to make such reparations contractually through warranties it may have given to the purchasers of its pavers. In any event, Wausau Tile could have declined to repair the pavers or pay for the property damage and left the affected third parties to their remedies.

¶ 27. In addition, as the circuit court recognized, joinder of the third-party real parties in interest would be difficult, if not impossible. *See* Wis. Stat. § 803.03(1), (3).[14] According to the complaint, Wausau Tile's pavers were sold and installed in large quantities nationwide.

---

[14] Wis. Stat. § 803.03 states in part:

**(1)** PERSONS TO BE JOINED IF FEASIBLE. A person who is subject to service of process shall be joined as a party in the action if:

(a) In the person's absence complete relief cannot be accorded among those already parties; or

(b) The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:

1. As a practical matter impair or impede the person's ability to protect that interest; or

2. Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

. . .

**(3)** DETERMINATION BY COURT WHENEVER JOINDER NOT FEASIBLE. If any such person has not been so joined, the judge to whom the case has been assigned shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If a person as described in subs. (1) and (2) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:

(a) To what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;

(b) The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

(c) Whether a judgment rendered in the person's absence will be adequate; and

256

*See* Compl. ¶ 11. Third parties having claims of property damage or personal injury are likely scattered throughout the country. Moreover, as the circuit court aptly pointed out, there is no way to know how many potential plaintiffs have yet to be harmed or will come forward with their claims.

¶ 28. Finally, Wausau Tile claims lost business and profits. Wausau Tile's lost business and profits are indirect losses attributable to the inferior quality of the pavers. *See Cooper Power Systems, Inc. v. Union Carbide Chem. & Plastics Co.*, 123 F.3d 675, 681 (1997) (applying Wisconsin law); *Daanen*, 216 Wis. 2d at 401; Swanson at 140. Accordingly, they constitute economic loss which is not recoverable in tort. *See Cooper Power*, 123 F.3d at 681; *Northridge*, 162 Wis. 2d at 926; *Bocre Leasing Corp. v. General Motors Corp.*, 645 N.E.2d 1195, 1199 (N.Y. 1995).

¶ 29. We conclude that Wausau Tile's complaint alleges only economic loss. Therefore, the first policy set forth by this court in *Daanen* supports the application of the economic loss doctrine in this case. Wausau Tile's claims involve failed economic expectations, which are the province of contract law. *See Daanen*, 216 Wis. 2d at 406–07.

¶ 30. The second policy reason for applying the economic loss doctrine is to protect parties' freedom to allocate economic risk via contract. *Daanen*, 216 Wis. 2d at 403. Allowing purchasers to elect recovery under tort theories instead of requiring them to rely on their contractual remedies "rewrites the agreement by allowing a party to recoup a benefit that was not part of the bargain." *Daanen*, 216 Wis. 2d at 408 (quoting

---

(d) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Stoughton Trailers, Inc. v. Henkel Corp.*, 965 F. Supp. 1227, 1230 (W.D. Wis. 1997)). It strips sellers of the ability to protect themselves from foreseeable risk by negotiating sales agreements. *Daanen*, 216 Wis. 2d at 408.

¶ 31. Wausau Tile and Medusa entered into a contract with a warranty which specifically addressed the suitability of the cement for use in the pavers.[15] We do not find it appropriate to address whether the warranty covers Wausau Tile's alleged damages; the breach of warranty and breach of contract claims are still pending. It is clear, however, that Wausau Tile had the opportunity to negotiate a warranty and did so. Presumably, Wausau Tile paid a price commensurate with the warranty it received. *See East River*, 476 U.S. at 873; *Bocre Leasing*, 645 N.E.2d at 1196; *Daanen*, 216 Wis. 2d at 409. If Wausau Tile were permitted to reap the benefits of a broader warranty by recovering its damages in tort, it would receive more than it bargained for (and paid for) and Medusa would receive less than it bargained for (and was paid for). Consequently, the second policy set forth in *Daanen* also supports the application of the economic loss doctrine in this case.

¶ 32. The third policy reason for applying the economic loss doctrine is that the doctrine "encourages the party with the best understanding of the attendant risks of economic loss, the commercial purchaser, to assume, allocate, or insure against the risk of loss caused by a defective product." *Daanen*, 216 Wis. 2d at 410. Purchasers are generally better equipped than

---

[15] There is no evidence that Wausau Tile and Medusa had unequal bargaining power. In general, a commercial situation involves entities with similar bargaining power. *See East River*, 476 U.S. at 873.

sellers to anticipate the economic loss which a defective product could cause their particular businesses. *See id.* at 411–12. Accordingly, courts have required purchasers to guard against foreseeable economic loss by allocating the risk by contract or by purchasing insurance. *See Daanen*, 216 Wis. 2d at 412–13; *Trans States Airlines*, 682 N.E.2d at 58–59. The result is a more efficient, more predictable marketplace. *See Daanen*, 216 Wis. 2d at 410–12. If tort recovery were permitted, sellers of products would be "potentially liable for unbargained-for and unexpected risks," *id.* at 411, leading eventually to higher prices for consumers. *See id.* at 410–12; *Bocre Leasing*, 645 N.E.2d at 1198.

¶ 33. Wausau Tile should reasonably have expected that it might receive defective or unsuitable cement. Because cement is one of the main components of pavers, Wausau Tile should also have foreseen that defective cement might produce defects in the pavers. Evidently, Wausau Tile did foresee this risk because it attempted to allocate the risk contractually with Medusa. Wausau Tile may not now turn to tort law in hopes of obtaining benefits for which it may not have bargained.

¶ 34. We find that the three policy reasons for applying the economic loss doctrine support the application of the doctrine in this case. Because Wausau Tile has alleged purely economic loss, the economic loss doctrine prevents Wausau Tile from maintaining its negligence and strict liability claims against Medusa.

### B.

¶ 35. Next, we consider whether the rule of *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 471 N.W.2d 179 (1991), permits Wausau Tile to maintain its tort claims in spite of the economic loss

doctrine. In doing so, we address the certified question: "the nature, extent and scope of the public safety exception to the economic loss doctrine enunciated in [*Northridge*]." Certification at 1.

¶ 36. Wausau Tile alleges that the damaged pavers present a risk of injury to pedestrians on the walkways in which they have been installed. According to Wausau Tile, this risk of injury to pedestrians amounts to a public safety hazard which entitles it to bring its tort claims under an exception to the economic loss doctrine contained in *Northridge*.

¶ 37. In *Northridge*, the defendant sold Monokote, a fireproofing material containing asbestos, to the plaintiffs' contractor for use in the construction of the plaintiffs' shopping centers. *Northridge*, 162 Wis. 2d at 922. The plaintiffs later sued the defendant for breach of warranty, strict products liability and negligence, claiming that the asbestos in the Monokote rendered it defective, contaminated plaintiffs' building, and "presented unreasonable danger to persons and property." *Id.* Plaintiffs sought to recover the amounts it had expended in inspecting the building and removing the asbestos, as well as the decrease in value of the property. *Id.* The defendant argued that the tort claims were barred by the economic loss doctrine. *Id.* at 929–30.

¶ 38. This court held that the plaintiffs had stated claims for negligence and strict liability. *Id.* at 923. We identified the issue as "whether the plaintiffs have alleged a tort claim for physical harm to property (property other than the allegedly defective product itself) or whether the losses complained of by the plaintiffs are only recoverable under a theory of contract." *Id.* at 931. We found that the plaintiffs did *not* allege in their tort claims that "the Monokote itself was inferior

in quality or did not work for its intended purpose, the essence of a claim for economic loss," *id.* at 937, nor had plaintiffs alleged that damages resulted because of harm to the product itself. *Id.* Rather, "[t]he essence of the plaintiffs' claim is that Monokote releases toxic substances in the environment thereby causing damage to the building and a health hazard to its occupants." *Id.* This court stated:

> We conclude that the complaint in this case can be interpreted as alleging that a defect in the product has caused physical harm to property, property other than the product itself. The alleged physical harm to other property consists of the contamination of the plaintiffs' buildings with asbestos from the defendant's product, posing a health hazard.

*Id.* at 922.

¶ 39. For several reasons, the holding we reached in *Northridge* is inapplicable to the facts of this case. First, the heart of Wausau Tile's claim is that Medusa's cement was inferior in quality and therefore unsuitable for its intended use as an ingredient of the pavers. As we determined in *Northridge*, that type of allegation is "the essence of a claim for economic loss." *Northridge*, 162 Wis. 2d at 937. We specifically pointed out in *Northridge* that the plaintiffs in that case had not sought damages for harm to the fireproofing material itself or alleged that the fireproofing material was inferior in quality. *Id.*

¶ 40. Second, we developed the *Northridge* rule in response to the unique facts of that case. *Northridge* involved a defective product which contained asbestos, an inherently dangerous material. *Northridge*, 162 Wis. 2d at 923. Exposure to asbestos has been linked to asbestosis (scarring of the lungs), various types of can-

261

cer, and disruption in lung functioning. *Board of Educ. of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 588 (Ill. 1989); *80 S. Eighth St. Ltd. Partnership v. Carey-Canada, Inc.*, 486 N.W.2d 393, 398–99 (Minn. 1992), *amended by* 492 N.W.2d 256 (Minn. 1992). Courts generally view asbestos cases as unique in the law. Christopher Scott D'Angelo, *The Economic Loss Doctrine: Saving Contract Warranty Law from Drowning in a Sea of Torts*, 26 U. Tol. L. Rev. 591, 601 (1995); Reeder R. Fox and Patrick J. Loftus, *Riding the Choppy Waters of East River: Economic Loss Doctrine Ten Years Later*, 64 Def. Couns. J. 260, 264–65 (April 1997). *E.g., Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 518 (Mich. Ct. App. 1992).

¶ 41. We pointed out in *Northridge* that "[s]everal courts have commented on the difficulty of trying to fit a claim for asbestos damage within the framework of physical harm or economic loss which has been established for more traditional tort and contract actions." *Northridge*, 162 Wis. 2d at 932. Because of the health hazards posed by asbestos, most courts permit tort recovery for claims of property damage to buildings caused by asbestos contamination in spite of the economic loss doctrine, using various rationales.[16] The

---

[16] Special treatment for claims of asbestos contamination to buildings is necessary to avoid the application of the rule that damage caused by a component of the building is damage caused by the "product" to itself for which tort recovery would not be permitted. Christopher Scott D'Angelo, *The Economic Loss Doctrine: Saving Contract Warranty Law from Drowning in a Sea of Torts*, 26 U. Tol. L. Rev. 591, 601 (1995). Even Wausau Tile acknowledges that "[i]t could be argued that strict application of the *Midwhey* ["integrated system"] rule would change the result in *Northridge*, because arguably the owner alleged property damage to the package it purchased (the mall)

Restatement (Third) of Torts § 21, which compiles and discusses cases involving recovery for economic loss, explains:

> One category of claims stands apart. In the case of asbestos contamination in buildings, most courts have taken the position that the contamination constitutes harm to the building as other property. The serious health threat caused by asbestos contamination has led the courts to this conclusion. Thus, actions seeking recovery for the costs of asbestos removal have been held to be within the purview of products liability law rather than commercial law.

Restatement (Third) of Torts § 21 cmt. e (1997).

¶ 42. In *Northridge*, this court chose to align Wisconsin with the jurisdictions which permit tort recovery for asbestos damage to buildings. *See Northridge*, 162 Wis. 2d at 937–38. Like courts in these

---

by a component of the mall (asbestos coating on the walls)." Wausau Tile's Br. at 17.

In *Northridge*, we cited numerous cases and commentary discussing the application of the economic loss doctrine to claims of asbestos contamination to buildings. *See Northridge*, 162 Wis. 2d at 932 nn.9–10, 935–36 nn.12–13. One authority sums up the various approaches taken by courts faced with tort claims for asbestos damage as follows:

> In what are generally viewed as the unique circumstances of asbestos cases involving property damage, courts have held that the economic loss doctrine does not apply and that the plaintiff may recover in tort for the removal of the asbestos. Courts employ the rationale that asbestos contaminates or harms "other property" in the building. Courts also have justified these decisions on the grounds that the contamination has endangered the health of the occupants or that it has rendered the property unfit for occupation.

Reeder R. Fox and Patrick J. Loftus, *Riding the Choppy Waters of East River: Economic Loss Doctrine Ten Years Later*, 64 Def. Couns. J. 260, 264–65 (April 1997) (internal footnotes omitted).

other jurisdictions, we designed the rule in *Northridge* to address the special public safety concerns present in claims involving contamination by inherently hazardous substances like asbestos. *See id. Northridge* does not create a broad "public safety exception" to the economic loss doctrine, as even Wausau Tile acknowledges.[17] Federal courts have read *Northridge* narrowly, refusing to apply its rule in cases not involving asbestos or other inherently dangerous contaminants. *See Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft*, 849 F. Supp. 666, 671–72 (E.D. Wis. 1994). *Cf. Trans States Airlines*, 682 N.E.2d at 55 (confining to its facts the Illinois case which held that asbestos damage to a building is not economic loss).

---

[17] Wausau Tile admits, "The certified question in itself may reflect a misunderstanding. Strictly speaking, *Northridge* did not address whether the risk to safety alone created an exception to the economic loss rule because *Northridge* concluded that the plaintiff alleged damage to 'other property' in the form of asbestos contamination of the plaintiff's building." Wausau Tile's Br. at 24. Nevertheless, Wausau Tile urges us to extend *Northridge* and create an exception to the economic loss doctrine under which purchasers of products which present an "unreasonable risk to health and safety" could recover in tort for damage to the product itself. Wausau Tile's Br. at 25. The United States Supreme Court rejected a similar argument in *East River* when it held that it would be "unsatisfactory" to condition the availability of a tort action on the degree of risk which a defective product might pose to persons or other property. *See East River*, 476 U.S. at 870. Other courts apparently are divided on this issue. *Compare Bocre Leasing Corp. v. General Motors Corp.*, 645 N.E.2d 1195, 1198 (N.Y. 1995), *with Salt River Project Agric. Improvement and Power Dist. v. Westinghouse Elec. Corp.*, 694 P.2d 198, 210 (Ariz. 1985). Because we have determined that this case does not involve an inherently unsafe product, we do not further address the argument.

¶ 43. The facts of this case do not involve asbestos or any other material which is inherently dangerous to the health and safety of humans. There is no allegation that Medusa's cement, standing alone, posed any health risk or threat of contaminating other property. Instead, the claim is that a reaction between an ingredient of the cement and other ingredients in the pavers rendered the pavers capable of causing injury to passing pedestrians. *Northridge* does not address claims of this kind.

¶ 44. Finally, this case is dissimilar procedurally from *Northridge. Northridge* was not a suit initiated by the purchaser of a defective product against the manufacturer, as is the suit in this case. In *Northridge,* the owner of other property (the building) damaged by the defective product (the asbestos-laden fireproofing material) sued the manufacturer of the product. This case would be more analogous to *Northridge* procedurally if the plaintiff were a third-party owner of property damaged by the defective pavers or even a pedestrian injured by the pavers. Wausau Tile and the plaintiffs in *Northridge* simply are not similarly situated.

˙ ¶ 45. For these reasons, we hold that the rule of *Northridge* is inapplicable in this case. We refuse to pass on to society the economic loss of a purchaser such as Wausau Tile who may have failed to bargain for adequate contract remedies. *See Daanen,* 216 Wis. 2d at 412–13. Wausau Tile's complaint alleges solely economic loss, and therefore, the circuit court properly dismissed Wausau Tile's negligence and strict liability claims.

## III.

¶ 46. Finally, we examine whether the circuit court properly determined that Travelers has no duty to defend Medusa in this suit. We review a circuit court's grant of summary judgment *de novo*. *Nierengarten v. Lutheran Soc. Serv.*, 219 Wis. 2d 687, 695, 580 N.W.2d 320 (1998). In our review, we use the same methodology as the circuit court and we benefit from the analyses of the circuit court and court of appeals (where applicable). *Id.*; *Jackson v. Benson*, 218 Wis. 2d 835, 852, 578 N.W.2d 602 (1998). Summary judgment must be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Wis. Stat. § 802.08(2); *Jackson*, 218 Wis. 2d at 852.

¶ 47. An insurer has a duty to defend an insured in a third-party suit if the allegations contained within the four corners of the complaint, would, if proved, result in liability of the insurer under the terms of the insurance policy. *Doyle v. Engelke*, 219 Wis. 2d 277, 284–85, 580 N.W.2d 245 (1998); *General Cas. Co. of Wisconsin v. Hills*, 209 Wis. 2d 167, 176, 561 N.W.2d 718 (1997); *Newhouse ex rel. Skow v. Citizens Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 834–35, 501 N.W.2d 1 (1993); *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 364, 488 N.W.2d 82 (1992). Thus, the duty to defend hinges on the nature, not the merits, of the claim. *School Dist. of Shorewood*, 170 Wis. 2d at 364. Any doubt as to the existence of the duty to defend must be resolved in favor of the insured. *Id.*; *Newhouse*, 176 Wis. 2d at 835.

¶ 48. Since we have already determined that Wausau Tile's negligence and strict liability claims

against Medusa are barred by the economic loss doctrine, Travelers can have no duty to defend Medusa on those claims. To determine whether Travelers has a duty to defend Wausau Tile's other claims, however, we must examine the language of the insurance policy.

■■

¶ 49. The Travelers policy covers claims which allege "bodily injury" or "property damage" arising out of an "occurrence."[18] As we have already explained, Wausau Tile seeks only economic loss, which is not "bodily injury" or "property damage" under the plain

---

[18] The relevant insurance policy provisions state:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement.**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. . . .
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> > **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> >
> > **(2)** The "bodily injury" or "property damage" occurs during the policy period.

. . .

**SECTION V - DEFINITIONS**

. . .

**3.**

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at a time.

. . .

language of the policy. Because we have determined that Wausau Tile may not litigate its claims of personal injury and property damage suffered by third persons not joined in this suit, those claims are not capable of resulting in Travelers' liability under the policy.[19] In

**9.**

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**12.**

"Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

Bird Aff. Ex. E at 1, 7–9 (emphasis in original).

[19] Wausau Tile insists that *Sola Basic Industries v. United States Fidelity & Guaranty Co.*, 90 Wis. 2d 641, 280 N.W.2d 211 (1979), requires that we hold that Travelers has a duty to defend Wausau Tile's claims of damage to third parties' property. We disagree. *Sola Basic* was decided a decade before this court first adopted the economic loss doctrine in *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 921, 437 N.W.2d 213 (1989). The issue in *Sola Basic* was whether the purchaser's alleged damages were covered by the language of the insurance policy. *See Sola Basic*, 90 Wis. 2d at 645–46. There was no contention that the purchaser could not have maintained its property damage claims.

In this case, in contrast, we have held that the economic loss doctrine bars Wausau Tile from litigating its claims of property damage. Under the insurance policy in this case, Travelers does not have a duty to defend claims which cannot be brought.

addition, it is undisputed that the breach of a contract or warranty is not a covered "occurrence" under the Travelers policy. Accordingly, we hold that Travelers has no duty to defend any of Wausau Tile's tort or contract claims.

¶ 50. Similarly, Travelers has no duty to defend Wausau Tile's claims of contribution and indemnification. Medusa may be liable for contribution and indemnification based on Wausau Tile's remaining claims for breach of contract and breach of warranty. As the circuit court recognized, however, Travelers' liability, and thus, its duty to defend, is dependent upon whether Wausau Tile has stated claims for "bodily injury" or "property damage" covered by the policy. *See generally Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 155, 539 N.W.2d 883 (1995). We have already determined that Wausau Tile has failed to allege such covered claims. Therefore, we conclude that Travelers has no duty to defend the contribution and indemnification claims.

## IV.

¶ 51. We hold that Wausau Tile's negligence and strict liability tort claims are barred by the economic loss doctrine because they allege only economic loss and do not fall within the ambit of *Northridge*. Wausau

---

*See City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 769, 781, 517 N.W.2d 463 (1994). Consequently, it is not necessary for us to decide precisely which property damage is covered under the policy, the question to which *Sola Basic* might be relevant.

We note that we do not decide whether Travelers might have a duty to defend Medusa against any claims of personal injury or property damage which might be asserted by third-party real parties in interest.

Tile may not escape the application of the economic loss doctrine by alleging personal injury and property damage suffered by third persons not joined in this suit. Accordingly, we affirm the circuit court's dismissal of Wausau Tile's tort claims against Medusa.

¶ 52. Further, we find that Travelers has no duty to defend Medusa in this suit because Wausau Tile's remaining claims, if proved, would not result in Travelers' liability under the insurance policy. We affirm the circuit court's entry of summary judgment in favor of Travelers and dismissal of all claims against Travelers.

¶ 53. This holding does not leave Wausau Tile or other injured parties without remedy for damages allegedly caused by the defective pavers. Wausau Tile may proceed against Medusa on its breach of warranty and breach of contract claims. We hold only that Travelers has no duty to defend those claims. In addition, third parties harmed by the faulty pavers are free to assert their own claims against Medusa and Travelers may have a duty to defend Medusa in such suits.

*By the Court.*—The judgment of the circuit court is affirmed.

¶ 54. ANN WALSH BRADLEY, J., did not participate.