# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1472

_____

| | |
|---|---|
| St. Paul Fire & Marine Insurance Company, | * <br> * <br> * |
| Plaintiff-Appellee, | * <br> * |
| v. | * <br> * |
| Amsoil, Inc.; | * <br> * |
| Defendant-Appellant, | * <br> * |
| Insurance Company of North America; | * <br> * <br> * |
| Defendant-Appellee, | * <br> * |
| Scottsdale Insurance Company, | * <br> * |
| Third Party Defendant-Appellee. | * <br> *   Appeals from the United States <br> District Court for the Eastern <br> District of Arkansas. |

_____

No. 02-1556          [UNPUBLISHED]

_____

| | |
|---|---|
| St. Paul Fire & Marine Insurance Company, | * <br> * <br> * |
| Plaintiff, | * <br> * |

v.                                          *

                                            *

Amsoil, Inc.;                               *

                                            *

     Defendant-Appellee,     *

                                            *

Insurance Company of North                  *

America;                                    *

                                            *

     Defendant-Appellant,    *

                                            *

Scottsdale Insurance Company,               *

                                            *

     Third Party Defendant.   *

_____

No. 02-1568

_____

St. Paul Fire & Marine Insurance            *

Company,                                    *

                                            *

     Plaintiff-Appellant,    *

                                            *

v.                                          *

                                            *

Amsoil, Inc.;                               *

                                            *

     Defendant-Appellee,     *

                                            *

Insurance Company of North                  *

America;                                    *

                                            *

     Defendant,              *

                                            *

Scottsdale Insurance Company,               *

Third Party Defendant.                    *
                                          *

_____

No. 02-1590

_____

St. Paul Fire & Marine Insurance          *
Company,                                  *
                                          *
                Plaintiff,                *
                                          *
        v.                                *
                                          *
Amsoil, Inc.;                             *
                                          *
                Defendant-Appellee,       *
                                          *
Insurance Company of North                *
America;                                  *
                                          *
                Defendant,                *
                                          *
Scottsdale Insurance Company,             *
                                          *
                Third Party Defendant-    *
                Appellant.                *

_____

Submitted:  September 10, 2002

Filed:  October 15, 2002
_____

Before MORRIS SHEPPARD ARNOLD, FAGG, and MELLOY, Circuit Judges.
_____

-3-

PER CURIAM.

Amsoil, Inc., a manufacturer and distributer of synthetic oil, was sued for negligence and breach of warranty in the Eastern District of Arkansas by Allen Engineering Corporation. Allen used Amsoil's synthetic oil as a lubricant in gear boxes it produced. Allen claimed the synthetic oil caused property damage to the gear boxes, resulting in financial harm incurred by Allen when it replaced the defective gear boxes, recalled all gear boxes with Amsoil oil and replaced the oil, and as a result, lost profits and market share. The two parties settled: Amsoil agreed to pay Allen $1.5 million.

Amsoil then sought indemnity under its comprehensive general liability (CGL) insurance policies with Insurance Company of North America, Scottsdale Insurance Company, and St. Paul Fire and Marine Insurance. All parties moved for summary judgment. The district court[*] concluded the insurance companies should reimburse $169,095.86 of the settlement as direct, covered product damages, but not the balance of the $1.5 million settlement ($1,330,904.14) which resulted from consequential economic losses not covered by the CGL policies.

Amsoil appeals, arguing the insurance companies should cover the entire settlement because the whole settlement paid for qualifying property damage. The insurance companies cross-appeal, contending they should not be required to indemnify Amsoil for any of the $1.5 million settlement because none of the expenses covered by the settlement were for property damage, so the entire settlement was precluded from insurance coverage under Wisconsin law. Having considered the parties' claims in this diversity case and reviewed the grant of summary judgment de

---

[*]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

novo, we affirm the judgment of the district court. Wal-Mart Stores, Inc. v. RLI Ins. Co., 292 F.3d 583, 586 (8th Cir. 2002) (standard of review).

First, we review the choice of law. We agree with the district court that although Allen's initial tort claims were brought in Arkansas, Wisconsin contract law governs the current dispute between Amsoil and its insurers. The parties reside and do business in Wisconsin and much of the insurance contract negotiations took place in Wisconsin. Fuller v. Hartford Life Ins. Co., 281 F.3d 704, 707 (8th Cir. 2002) (Arkansas courts apply the "most significant relationship" test to resolve a choice of law dilemma). Further, claims seeking to enforce insurance policies fall under contract law, not tort law. Wis. Label v. Northbrook Prop. & Cas. Ins. Co., 607 N.W.2d 276, 282 (Wis. 2000) ("Insurance policies are contracts and are governed by the same rules that govern interpretation of contracts in general.").

Second, having decided Wisconsin contract law governs this case, we evaluate the district court's application of that law. Under Wisconsin law, "CGL polic[ies] protect[] the insured against liability for [property] damages the insured's negligence causes to third parties. . . . [But they] do not provide coverage for the insured's liability for repairing or replacing the insured's defective work . . . ." Id. at 283-84. Specifically, "[c]overage under a CGL policy does not extend to 'business risks'–risks relating to the repair or replacement of the insured's faulty work or products, or defects in the insured's work or product itself." Vogel v. Russo, 613 N.W.2d 177, 182 (Wis. 2000). Additionally, economic loss which is not "property damage" is not covered under a CGL policy. Wausau Tile v. County Concrete Corp., 593 N.W.2d 445, 460 (Wis. 1999). If an insured's "claim for repair and replacement costs is that the [final products] were damaged because one or more of their ingredients was of insufficient quality and did not work for [the insured's] intended purpose[,] [t]his is the essence of a claim for economic loss." Id. at 454.

We agree with the district court that the "damages because of property damages" clause contained in Amsoil's CGL insurance contracts does not obligate the insurers to cover costs beyond the $169,095.86 cost incurred in repairing and replacing the 48 riding trowels to which the Amsoil synthetic oil caused actual physical harm. Allen's publicity of a recall of products using Amsoil synthetic oil and the replacement of the oil in all recalled items account for $175,030.00 of the settlement. According to the settlement agreement, $1,155,874.14 (the remainder of the settlement) "is allocated to the consequential damages suffered by Allen . . . . [specifically,] the lost production, sales, profits, and market share that flowed from the damaged machines, *i.e.*, the diminution in value of Allen's business caused by the damaged machines."

The dissent takes the position that Amsoil should be indemnified for at least part of the $1,155,874.14 in consequential damages it paid Allen. To reach this conclusion, however, the dissent relies heavily on a tort case involving a products liability claim, Daanen & Janssen, Inc. v. Cedarapids, Inc., 573 N.W.2d 842 (Wis. 1998), rather than on a case involving a CGL policy. As we have explained earlier, under Wisconsin contract law, the portions of the settlement that pay for Allen's product recall and for its lost profits and market share are economic losses and business risks not insured under Amsoil's CGL policies. Thus, we conclude Amsoil is not eligible to be reimbursed for these portions of its settlement.

Third, we turn to the insurance companies' cross-appeals. The insurance companies contend they should not be obligated to indemnify Amsoil at all because the $169,095.86 portion of the settlement which the district court concluded was for qualifying property damage is instead for economic loss. We disagree. According to the settlement agreement, this portion of the settlement "is allocated to the cost of repairing or replacing the approximately 48 riding trowels that sustained physical damage as a result of the use of Amsoil's" synthetic oil. Because these costs are

"damages caused by property damages," they are not exempt economic losses and must be reimbursed by Amsoil's insurers under the CGL insurance policies.

For the reasons stated above, we affirm the decision of the district court.

MELLOY, Circuit Judge, concurring in part and dissenting in part.

I concur with those portions of the majority opinion which find that: (1) Wisconsin contract and insurance law governs this dispute; (2) the $169,095.86 portion of the settlement constitutes covered property damage under the commercial general liability ("CGL") insurance contracts purchased by Amsoil from the appellees;[1] and (3) the $175,030 portion of the settlement allocated to recall and replacement of the synthetic oil is a non-covered loss.[2]

I respectfully dissent, however, from that portion of the decision which finds that Amsoil is not entitled to indemnification for the consequential damage portion of the settlement it paid to Allen because these damages constitute uninsured "economic losses and business risks." I believe this portion of the decision is contrary to the Wisconsin Supreme Court's interpretation and application of the economic loss doctrine. Under that doctrine, once we determine there was covered property damage, i.e. damage to property other than the insured's own product, then any consequential damages that reasonably flow from the covered property damage are covered under the CGL insurance policies Amsoil purchased from the appellees.

---

[1]Therefore, I also agree with that portion of the majority opinion which denies the cross-appeals made by the insurance companies.

[2]I do not believe that Amsoil requested indemnification for this portion of the settlement on appeal or in its motion for summary judgment in the district court.

The Wisconsin Supreme Court adopted the economic loss doctrine in Sunnyslope Grading, Inc. v. Miller, Bradford, & Risberg, Inc., 437 N.W.2d 213 (1989). In that case, the court stated "[w]e hold that a commercial purchaser of a product cannot recover **solely** economic losses from the manufacturer. . . ." Id. at 217-218 (emphasis added). Later decisions have interpreted Sunnyslope and the economic loss doctrine to exclude from coverage, under CGL insurance policies, claims where there exists no personal injury or damage to property other than the insured's own product. See, e.g., Daanen & Janssen, Inc. v. Cedarapids, Inc., 573 N.W.2d 842 (WI 1998); Wausau Tile, Inc. v. County Concrete Corp., 593 N.W.2d 445 (WI 1999); Vogel v. Russo, 613 N.W.2d 177 (WI 2000).

However, when economic losses are coupled with covered property damage the economic loss doctrine has not been used to prevent an insured from obtaining indemnification under a CGL policy—both for the property damage and economic damages, i.e. consequential damages, caused by the damage to the covered property. This limitation on the economic loss rule has been clearly stated by the Wisconsin Supreme Court:

> The economic loss doctrine, however, does not bar a commercial purchaser's claims based on personal injury or damage to property other than the product, or economic loss claims that are alleged **in combination with noneconomic losses.** In short, economic loss is damage to a product itself or monetary loss caused by the defective product, which does not cause personal injury or damage to other property.

Daanen, 573 N.W.2d at 845(emphasis added) (internal citations omitted); see also Wausau Tile, 593 N.W.2d at 451(referring to Daanen).

In this case, we have unanimously determined that Amsoil has the right to indemnification for qualifying property damage, i.e. damage which is covered under

-8-

the CGL insurance policies purchased by Amsoil.  Therefore, I believe Amsoil is entitled to indemnification for at least a portion of the amount it paid to settle Allen's claims for consequential damages.

I therefore respectfully dissent and would reverse the judgment of the district court on the issue of consequential damages.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.