**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Eduardo ESPINOZA,**
**Defendant-Appellant.**

**No. 87–1185**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 21, 1987.

Robert Ramos, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Janet E. Bauerle, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GEE, GARWOOD, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Espinoza seeks relief from the refusal of the district court to suppress evidence obtained in a police search of his home. We affirm.

On May 6, 1986, El Paso police obtained a warrant for Espinoza's arrest and to search his house for narcotics, based on information from a reliable, confidential informant that Espinoza and his wife were dealing narcotics at that location. Because the house was heavily secured and the police feared that Espinoza would be able to destroy evidence if they attempted to arrest him inside, the police set up surveillance in an attempt to intercept Espinoza outside. On May 7, 1986, the police stopped a car, believed to be Espinoza's, as it left the premises. Finding Espinoza and his wife and her sister inside, they arrested Espinoza and returned to his house.

Upon entering the house, the police noticed a triple-beam scale in the kitchen and several antique guns in a display case in the living room. Suddenly a car pulled into Espinoza's driveway and two men got out and approached the back door of the house. One man, later identified as Crouse, was carrying a chrome-plated shotgun and called out Espinoza's nickname. A police radio inadvertently sounded and the men fled, but they were quickly captured by the police. Officer Apodaca then interviewed Crouse and learned that the shotgun in Crouse's possession was stolen and that he had intended to trade it to Espinoza for narcotics. Crouse also told Apodaca that the other man, Fineron, had recently traded a stolen shotgun to Espinoza for drugs and that the gun was in the house.

At about this time, Detective Pacheco informed Apodaca that he had discovered several guns in a corner of the bedroom. Based on Crouse's statements and their own suspicions, the police confiscated the guns, as well as drug paraphernalia and cash found in the house and eighteen balloons containing heroin and cocaine found on Mrs. Espinoza.

Espinoza was indicted on two counts of knowing and unlawful receipt and possession of the shotgun and two handguns found in the bedroom corner. 18 U.S.C. §§ 922(h)(1), 924(a); 18 U.S.C.App. II § 1202(a)(1). At a pretrial hearing, the district court denied Espinoza's motion to suppress the guns as the product of an illegal search. Espinoza subsequently pleaded guilty and was sentenced to two years incarceration, conditioned on the right to take this appeal of the suppression ruling.

It is undisputed that the warrant at issue was limited to narcotics, and that the seizure of the guns cannot be justified under the warrant. The government, however, contends that the guns were discovered in plain view during a lawful search of the premises, and were lawfully seized under the plain view exception to the fourth amendment's warrant requirement. This was the basis of the trial court's ruling. Espinoza disagrees.

As enunciated by the Supreme Court in *Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983), a valid "plain view" seizure requires the following:

1. The officer must lawfully make an initial intrusion or otherwise properly be in a position from which he can view a particular area;

2. The officer must discover incriminating evidence "inadvertently," i.e., he may not know in advance the location of certain evidence and intend to seize it under the pretext of the plain view doctrine; and

3. It must be "immediately apparent" to the officers that the items they observe may be evidence of crime, contraband, or otherwise subject to seizure.

Examining each element in turn, we find that the government established a proper plain view seizure.

### Proper Initial Intrusion

The guns were discovered during the course of a search for narcotics, and appellant does not challenge the district court's finding that the search warrant and supporting affidavit were legally sufficient for that purpose. As the officers were legally in Espinoza's house, this element is satisfied. See *United States v. Whaley*, 781 F.2d 417, 419–21 (5th Cir.1986).

## Inadvertently Discovered

Espinoza contends that Crouse's statements to the police gave the police prior knowledge that stolen firearms would be found in his house, and thus the guns could not have been inadvertently discovered. We disagree. There is no evidence in the record to suggest that the police had any advance knowledge that there would be stolen firearms in the house and that they were relying on the plain view doctrine only as a pretext for the seizure. *Texas v. Brown*, 460 U.S. at 733, 103 S.Ct. at 1540. In fact, the record indicates that the guns were discovered by Detective Pacheco while Officer Apodaca was outside interviewing Crouse, and Pacheco learned of Crouse's statements after he had discovered the firearms.

## Evidentiary Nature
## Immediately Apparent

Espinoza finally argues that if the officers learned from Crouse that there might be stolen firearms in the house only after they discovered them, then the evidentiary nature of the firearms was not "immediately apparent." Alternatively, he contends, the information supplied by Crouse was not sufficiently detailed to justify the officers' conclusion that the particular weapons seized were "immediately apparent" evidence of crime. Appellant's characterization of events pertinent to the third prong of the plain view test founders on the facts of record and, as will be demonstrated, on a misunderstanding of this requirement.

Even before learning of Crouse's statements, as the district court found, the officers were aware that drug addicts often trade stolen guns for narcotics. Given the previous discoveries of narcotics, paraphernalia, and significant amounts of cash, as well as the informant's tip that Espinoza was involved in drug dealing, there was probable cause for Detective Pacheco to believe that the guns were stolen or were the profits of Espinoza's drug trafficking when he discovered them. As the Supreme Court has further explained, the implication of the "immediately apparent" criteri-

on derived from *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), is that it is not necessary that the officer know that the discovered res *is* contraband or evidence of a crime, but only that there be "a 'practical, nontechnical' probability that incriminating evidence is involved." *Texas v. Brown*, 460 U.S. at 742–43, 103 S.Ct. at 1542–43. *Accord, Arizona v. Hicks*, —— U.S. ——, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987). From Detective Apodaca's standpoint, there was also probable cause to "'associate the property with criminal activity.'" *Texas v. Brown*, 460 U.S. at 739, 103 S.Ct. at 1541, quoting *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). After questioning Crouse and learning that Espinoza had traded cocaine for firearms, Apodaca was informed that Pacheco had discovered weapons in the bedroom. The immediately apparent evidentiary value of the find in light of all the circumstances can hardly be doubted.

More fundamentally, Appellant's insistence upon a necessary connection between Crouse's statements and the officers' plain view discovery of the firearms is flawed. The Supreme Court rejected, in *Texas v. Brown*, the contention that a police officer "must be possessed of near certainty as to the seizable nature of the items." 460 U.S. at 742–43, 103 S.Ct. at 1543. Espinoza was eventually charged in part with unlawful possession of firearms by a convicted felon, a crime that has nothing to do with Crouse's information that Espinoza traded them for drugs. Espinoza's conviction exemplifies the enormous variety of statutes that bear on firearms and may be applied against drug traffickers. Given the virtual omnipresence of firearms in the illegal drug business, and the officers' undisputed testimony to their familiarity with this fact, it would seem to us a strange case in which firearms located at the site of a proper narcotics search would not be immediately apparent as incriminating evidence.

Because all three elements of a "plain view" seizure were present in this case, the

district court properly denied Espinoza's motion to suppress.

AFFIRMED.