Peter M. Selzer, Plaintiff-Appellant,

v.

Brunsell Brothers, Ltd. and St. Paul Fire & Marine Insurance Company, Defendants,

Marvin Windows, Inc., Marvin Lumber & Cedar Company, and Marvin Windows of Tennessee, Defendants-Respondents.

Court of Appeals

*No. 01–2625. Submitted on briefs March 14, 2002.—Decided August 29, 2002.*

2002 WI App 232

(Also reported in 652 N.W.2d 806.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William F. Bauer* and *Amy F. Scholl* of *Coyne, Niess, Schultz, Becker & Bauer, S.C.*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Thomas A. Piette* of *Piette Law Firm, S.C.*, Waukesha and *Donald J. Brown* and *Thomas H. Boyd* of *Winthrop & Weinstine, P.A.*, St. Paul, Mn.

Before Vergeront, P.J., Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Peter Selzer appeals a judgment dismissing his claims against Marvin Lumber & Cedar Company for damages related to the decay of windows Selzer purchased from Marvin for use in his home.[1] Selzer claims Marvin breached an express warranty it made when selling him the windows, as well as an implied warranty arising from the sale transaction. He also claims that a statement in Marvin's product catalog ("all exterior wood is deep-treated to permanently protect against rot and decay") constituted fraudulent advertising under WIS. STAT. § 100.18

---

[1] Marvin is the last of the five named defendants remaining in this lawsuit. Prior to appeal, Selzer dismissed all claims against Brunsell Brothers, Ltd., St. Paul Fire & Marine Insurance Company, Marvin Windows, Inc., and Marvin Windows of Tennessee.

(1999–2000),[2] and that the statement renders Marvin liable for strict responsibility and negligent misrepresentation.

¶ 2. We conclude that Selzer's warranty claims and his claim for fraudulent advertising are time-barred. We also conclude that the economic loss doctrine bars Selzer's misrepresentation claims. We therefore affirm the trial court's dismissal of Selzer's claims on summary judgment.

## BACKGROUND

¶ 3. Marvin is a manufacturer of windows. As part of the manufacturing process, Marvin treats the wood it uses in its windows with a preservative intended to prevent the growth of wood decay fungi. Marvin advertised its use of a wood preservative in one of its previous product catalogs, stating, "all exterior wood is deep-treated to permanently protect against rot and decay."

¶ 4. At all times relevant to this case, Marvin sold its windows with a one-year warranty on its millwork. As a matter of business policy, Marvin attached a copy of the warranty to every window sold. The warranty provided in part:

> Marvin millwork is warranted for one year after sale to be of high quality workmanship and materials, and to be free from defects which might render it unserviceable . . . .
>
> . . . .
>
> For one year, we agree to repair or replace . . . without charge, any items which may be defective . . . .

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

. . . .

THE EXPRESS WARRANTIES SET FORTH HEREIN ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.

¶ 5. By no later than 1990, Selzer purchased and took delivery of a number of Marvin windows for installation in his home. Selzer claims that his architect, acting on his behalf, recommended that he purchase Marvin windows based on the above quoted statement in the Marvin product catalog ("all exterior wood is deep-treated to permanently protect against rot and decay"). Selzer denies that either he or his architect received a copy of Marvin's one-year warranty before the purchase or delivery of the windows.

¶ 6. In 1997, Selzer noticed wood rot in several of the window frames. Over the course of time, the rot spread to the siding below a number of the windows.

¶ 7. Selzer contacted Marvin concerning the window rot. Marvin representatives inspected his home, confirmed the presence of rot in numerous windows, and offered Selzer a discount on new windows.

¶ 8. Selzer declined this offer and filed suit in January 2000. Selzer brought a variety of claims: breach of express and implied warranties, fraudulent misrepresentation under WIS. STAT. § 100.18, intentional misrepresentation, strict responsibility misrepresentation, and negligent misrepresentation.

¶ 9. On cross-motions for summary judgment, the trial court granted summary judgment to Marvin on all claims. Selzer moved the court to reconsider certain aspects of its summary judgment decision; the court

denied this motion and entered a final judgment dismissing Selzer's complaint. Selzer appeals the judgment, challenging the dismissal of all of his claims except that for intentional misrepresentation, which he no longer pursues.

## ANALYSIS

¶ 10. We review a circuit court's grant or denial of summary judgment de novo, owing no deference to the trial court's decision. *Waters v. United States Fid. & Guar. Co.,* 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.,* 195 Wis. 2d 485, 497, 536 N.W.2d 175 (Ct. App. 1995); *see also* WIS. STAT. § 802.08(2). We will reverse a decision granting summary judgment if either (1) the trial court incorrectly decided legal issues, or (2) material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.,* 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). In our review, we, like the trial court, are prohibited from deciding issues of fact; our inquiry is limited to a determination of whether a factual issue exists. *Id.*

¶ 11. Generally, when both parties move for summary judgment and neither argues that factual disputes bar the other's motion, the " 'practical effect is that the facts are stipulated and only issues of law are before us.' " *See Lucas v. Godfrey,* 161 Wis. 2d 51, 57, 467 N.W.2d 180 (Ct. App. 1991) (citation omitted). Here, the parties dispute certain facts relating to the applicability

of Marvin's one-year "limited" warranty. Marvin claims that it communicated the warranty terms to Selzer and his agents through a variety of means, and that these terms bar Selzer's warranty claims. Selzer replies that he knew nothing of the warranty before purchasing the windows, and even if he had, Marvin waived the warranty through its course of conduct.

¶ 12. This factual dispute does not require us to reverse the trial court's grant of summary judgment, however. To require reversal, an asserted factual dispute must be material; that is, it must concern a fact that affects the resolution of the controversy. *Clay v. Horton Mfg. Co., Inc.*, 172 Wis. 2d 349, 353–54, 493 N.W.2d 379 (Ct. App. 1992). The dispute concerning Marvin's one-year warranty does not preclude a resolution of this litigation as a matter of law. Even if Marvin's limited warranty does not govern its sale of windows to Selzer, Selzer's warranty claims cannot be sustained for reasons we discuss below.

I.

¶ 13. We first address Selzer's express warranty claim. The elements of an express warranty are: (1) an affirmation of fact;[3] (2) inducement to the buyer; and (3) reliance thereon by the buyer. *See Acme Equip. Corp. v. Montgomery Coop. Creamery Ass'n*, 29 Wis. 2d 355, 359, 138 N.W.2d 729 (1966). Selzer's architect averred in part:

---

[3] We agree with the trial court that the language at issue ("all exterior wood is deep-treated to permanently protect against rot and decay") is an affirmation of fact. Specifically, we conclude that the statement describes the present condition or features of the windows at the time of sale. *See* ¶ 23 below.

3. I was the architect involved in the design and specifications of Peter M. Selzer's home located in Verona, Wisconsin. I specified the Marvin windows and doors that were incorporated in the Selzer home.

4. Marvin sent me the attached "Catalog Number 8" which I used extensively in 1988 for the selection of windows for Selzer's home.

5. Page 2 of Catalog Number 8 provides "and all exterior wood is deep-treated to permanently protect against rot and decay." I relied on that language at the time of the design and in selecting Selzer's windows.

██

¶ 14. Although the averments are sparse, we conclude they are sufficient to support Selzer's claim that, through his architect, he relied on and was induced by the purported warranty.[4] The architect's statements that he received the catalog, used it extensively, and relied on the language at issue in recommending Marvin windows are evidentiary facts within his personal knowledge that we will consider. *See* WIS. STAT. § 802.08(3); *Helland v. Kurtes A. Froedtert Mem'l Lutheran Hosp.*, 229 Wis. 2d 751, 764, 601 N.W.2d 318 (Ct. App 1999) (A party opposing summary judgment "must file affidavits or other supporting papers based upon personal knowledge of specific evidentiary facts that are admissible.").[5]

---

[4] Marvin does not dispute that because Selzer authorized his architect to select the windows for his home, the architect was acting as Selzer's agent, and any knowledge gained in the course of the agency is imputed to Selzer. *See Ivers & Pond Piano Co. v. Peckham*, 29 Wis. 2d 364, 369, 139 N.W.2d 57 (1966).

[5] The trial court dismissed Selzer's express warranty claim because it deemed architect's affidavit "conclusory" and there-

¶ 15. Marvin points to no submissions contradicting these facts. "Evidentiary matters in affidavits accompanying a motion for summary judgment are deemed uncontroverted when competing evidentiary facts are not set forth in counteraffidavits." *Wisconsin Elec. Power Co. v. California Union Ins. Co.*, 142 Wis. 2d 673, 684, 419 N.W.2d 255 (Ct. App. 1987). Accordingly, we conclude that Selzer has made a prima facie showing that an express warranty existed with respect to the condition of the windows at the time of sale, specifically, that their exterior wood had been "deep-treated to permanently protect against rot and decay." We next consider Marvin's contention that, even if Selzer's submissions on summary judgment are sufficient to preclude dismissal of the warranty claims for lack of factual support, the claims are nonetheless time-barred.

¶ 16. Because the sale of the windows is a transaction in goods, it is governed by the Uniform Commercial Code—Sales (WIS. STAT. ch. 402). *See* WIS. STAT. § 402.102. A warranty action must be commenced within six years after the "cause of action has accrued." WIS. STAT. § 402.725(1).[6] Generally, a warranty action

_____

fore not worthy of consideration on summary judgment. The court opined that the affidavit would have sufficed had the architect stated he chose Marvin windows "because of the statement in question" rather than stating that he "relied on" it. In our de novo review, we focus on the substance of the architect's averments, as opposed to his word choice, and conclude it establishes a prima facie showing of inducement by and reliance on the affirmed fact.

[6] WISCONSIN STAT. § 402.725, states:

(1) An action for breach of any contract for sale must be commenced within 6 years after the cause of action has accrued.

accrues at the time the warranty is breached; i.e., at the time of delivery of the goods. *See* § 402.725(2). If the warranty "explicitly extends to future performance of the goods," however, the statute provides an exception to this rule; namely, the action accrues when the buyer discovers or should have discovered the breach. *Id.*

¶ 17. Here, the timeliness of Selzer's warranty claims hinges on the applicability of the "future performance" exception in Wis. Stat. § 402.725(2). Marvin delivered the windows by no later than 1990; Selzer filed suit in 2000. If his warranty claims accrued at delivery, the limitation period ended in 1996, well before he filed suit. However, if his claims fall within the "future performance" exception, the claims accrued at the time he first discovered the window rot (1997), and the claims would therefore be timely.

¶ 18. Although no Wisconsin case has determined the scope of the "future performance" exception to Wis. Stat. § 402.725, courts in several other jurisdictions that have enacted the U.C.C. have done so. We may properly look to these rulings to guide our analysis of § 402.725. *National Operating v. Mutual Life Ins. Co. of N.Y.*, 2001 WI 87, ¶ 30, 244 Wis. 2d 839, 630 N.W.2d 116 (Wisconsin courts may properly look to rulings

By the original agreement the parties, if they are merchants, may reduce the period of limitation to not less than one year. The period of limitation may not otherwise be varied by agreement.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

from other jurisdictions that have enacted the U.C.C. in order to promote the uniformity of interpretation of U.C.C. provisions.).

¶ 19. "The courts have applied a stringent standard in determining whether a warranty explicitly extends to future performance." *Cooper Power Sys., Inc. v. Union Carbide Chems. & Plastics Co., Inc.*, 123 F.3d 675, 684 (7th Cir. 1997). Specifically, for such a warranty to exist, " 'there must be specific reference to a future time in the warranty.' " *Id.* (quoting *Standard Alliance Indus. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir. 1978), *cert. denied,* 441 U.S. 923 (1979)). The requirement of a "specific reference to a future time" is satisfied when a warranty guarantees a product for a particular number of years, or for a less precise, but still determinable period of time. *See Church of the Nativity of Our Lord v. WatPro, Inc.*, 474 N.W.2d 605, 611 (Minn. Ct. App. 1991) (warranty that roof would remain watertight for ten years constituted warranty of future performance), *aff'd,* 491 N.W.2d 1 (Minn. 1992); *Moore v. Pugent Sound Plywood, Inc.*, 332 N.W.2d 212, 215 (Neb. 1983) (warranty that product "would last the lifetime of the house" constituted warranty of future performance); *see also* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 11–9, at 608–09 (4th ed. 1995) (collecting cases).

¶ 20. The use of a "stringent standard" in applying U.C.C. § 2–725(2) comports with the subsection's plain language. While all warranties in a general sense apply to the future performance of goods, the future performance exception applies only where the warranty "*explicitly* extends to future performance." WIS. STAT. § 402.725(2) (emphasis added); *see also* White &

Summers, *Uniform Commercial Code* § 11–9, at 608. "Explicitly" is synonymous with clearly, definitely, precisely, and unmistakably, and has been defined as "fully and clearly expressed or demonstrated; leaving nothing merely implied; unequivocal." *See Perugi v. State*, 104 Wis. 230, 242, 80 N.W. 593 (1899), *overruled in part on other grounds by Montgomery v. State*, 128 Wis. 183, 107 N.W. 14 (1906); THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 681 (2d ed. 1987). Thus, any ambiguity in warranty language should be interpreted against the existence of a future performance warranty. *See* 4B Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 2–725:125 (3rd ed. 2001) (collecting cases).

¶ 21. The use of a "stringent standard" in applying U.C.C. § 2–725(2) also comports with the subsection's overriding purpose: to give businesses a clearly defined limit on the period of their potential liability. *H. Sand & Co. v. Airtemp Corp.*, 738 F. Supp. 760, 770 (S.D.N.Y. 1990), *aff'd in part, rev'd in part on other grounds,* 934 F.2d 450 (2nd Cir. 1991). The drafters of the U.C.C. decided that this goal " 'outweighed the buyer's interest in an extended warranty and reserved the benefits of an extended warranty to those who *explicitly* bargained for them.' " *Id.* (citation omitted).

¶ 22. Courts have consistently held that vague statements concerning product longevity do not comply with the requirement of a "specific reference to a future time" that would create a warranty of future performance within the meaning of WIS. STAT. § 402.725(2). *See Cooper Power Sys., Inc.*, 123 F.3d at 684 (statement that product will maintain its appearance for "many years" is not future performance warranty); *Economy Hous. Co., Inc. v. Continental Forest Prods., Inc.*, 805

F.2d 319, 320–21 (8th Cir. 1986) (statement that product "is intended for 'permanent' exterior exposure" is not future performance warranty); *Homart Dev. Co. v. Graybar Elec. Co.*, 63 A.D.2d 727, 727 (N.Y. App. Div. 1978) (statement that product is "designed to give long and reliable service" is not future performance warranty). Rather, where " 'the words alleged to extend a warranty to future performance are so unclearly stated and are so set forth that there is doubt as to their meaning, a court should not infer that more than a warranty of present characteristics, design or condition was intended.' " *See Western Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1552 (9th Cir. 1994) (citation omitted).

¶ 23. The statement in Marvin's catalog that "all exterior wood is deep-treated to permanently protect against rot and decay" does not "explicitly" extend to future performance. Rather, the phrase describes a particular feature of Marvin's millwork (that "it is deep-treated" with a wood preservative) as well as the purpose of this feature ("to permanently protect against rot and decay"). Unlike the warranty that Selzer wishes to impose, the phrase falls short of guaranteeing either a rot-free level of protection or any determinable period during which such protection would last. "[A]n express warranty of the present condition of goods without a specific reference to the future is not an explicit warranty of future performance, even if the description implies that the goods will perform a certain way in the future." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 879 (8th Cir. 2000) ("*PPG*"). Thus, we conclude that the phrase at issue does not qualify for the "future performance" extension of the normal war-

ranty limitation period, and that Selzer's express warranty claim is accordingly time-barred.[7]

■■■■■■

¶ 24. Similarly, the "future performance" exception is not available to Selzer's implied warranty claim. "Implied warranties cannot, by their very nature, explicitly extend to future performance." *Id.* at 879. "Stated differently, the statute of limitations will always start to run against claims based on implied warranty from the time when delivery of the goods is tendered." 2 William D. Hawkland, *Uniform Commercial Code Series* § 2–725:2 (1998) (collecting cases); *accord* Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 2–725:131 (collecting cases). Thus, Selzer's implied warranty claim accrued upon the delivery of the windows by at the latest 1990, and the limitation period elapsed six years later in 1996. Accordingly, we also affirm the dismissal of this claim as time-barred.[8]

■■■■■■

¶ 25. Selzer seeks to avoid this result by arguing that Marvin should be judicially estopped from raising a timeliness argument regarding Selzer's warranty claims. Judicial estoppel precludes a party from assert-

---

[7] Marvin also asserts that Selzer's reliance on this "Catalog Number 8" was inappropriate because the catalog was outdated. Because we conclude that Selzer's claim for breach of express warranty is time-barred, we do not reach Marvin's improper reliance argument.

[8] Selzer argues that this result runs afoul of sound public policy, but Wisconsin courts have consistently held that the legislature is the proper entity to address concerns regarding the policies underlying statutes of limitation. *See Tomczak v. Bailey*, 218 Wis. 2d 245, 254, 578 N.W.2d 166 (1998).

ing a position in a legal proceeding and then later asserting an inconsistent position. *See Harrison v. LIRC*, 187 Wis. 2d 491, 497, 523 N.W.2d 138 (Ct. App. 1994). The doctrine only may be invoked if: (1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; and (3) the party to be estopped convinced the first court to adopt its position. *See id.*

¶ 26. Marvin brought warranty claims in 1994 against PPG Industries, the manufacturer of a wood preservative known as PILT, which Marvin applied to its windows for a brief period of time. *PPG*, 223 F.3d at 875. Marvin had discovered that PILT did not protect against wood rot as well as expected.[9] *Id.* Marvin claimed in the litigation that PPG representatives made several warranties concerning PILT: (1) that it prevents wood rot; (2) that it is a "better product" than Penta (another preservative); (3) that it would last as long as windows treated with Penta; and (4) that it would outlast the twenty-six-year-old windows that a Marvin representative had in his home that had been treated with Penta. *Id.* at 879–80. The court held that the latter two statements created a genuine issue of material fact with respect to an explicit warranty of future performance, because these statements warranted the future performance of PILT for a specific, determinable period of time; i.e., that it would last as long or longer than Penta. *Id.* at 880–81. In comparison, the court held that the former two warranties—that PILT prevents rot or is a "better product" than Penta—

---

[9] The record is unclear as to whether Marvin had treated Selzer's windows with PILT. Marvin ceased using PILT at approximately the same time it manufactured Selzer's windows, so it is possible that Marvin treated Selzer's windows with PILT or with its replacement or some with each.

were merely descriptions of the present qualities of the goods and therefore did not qualify for the future performance exception. *Id.* at 880.

¶ 27. In addition to the fact that Marvin's allegedly inconsistent arguments were made in factually distinct litigation involving a different party, Selzer's judicial estoppel argument fails on the third element, which requires that the party to be estopped must have convinced a prior court to adopt its position. The court disagreed in *PPG* with Marvin's argument that warranties describing the present condition of goods may qualify for the future performance exception, holding instead that such warranties do *not* give rise to a warranty of future performance, the position which Marvin now wants this court to adopt. If we were to conclude that Marvin could not make its present argument, we would encourage parties to ignore the lessons of prior litigation. In short, we see no basis for invoking judicial estoppel against Marvin on this issue. *See Harrison*, 187 Wis. 2d at 497 (noting that "a litigant is not forever bound to a losing argument").

## II.

¶ 28. We next address the dismissal of Selzer's false advertising claim. Selzer contends the trial court's dismissal of this claim as time-barred violates public policy. We disagree.

¶ 29. Wisconsin's false advertising statute, WIS. STAT. § 100.18(11)(b)3, provides that "[n]o action may be commenced under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action." By the plain terms of this statute, Selzer's cause of action accrued in 1988

when Marvin provided his architect the catalog containing the allegedly false representation, and his statutory claim expired three years later in 1991. This is so regardless of whether Selzer knew of his injury by 1991. *See Kain v. Bluemound East Indus. Park, Inc.*, 2001 WI App 230, ¶ 14, 248 Wis. 2d 172, 635 N.W.2d 640 (As a statute of repose, § 100.18 requires that a cause of action must be commenced within three years " 'after the defendant's action which allegedly led to the injury, *regardless of whether the plaintiff has discovered the injury or wrongdoing.*' ") (citation omitted).

¶ 30. Selzer argues, however, that "public policy considerations" require that his cause of action should be deemed to have accrued when he discovered the window rot. As we have noted (see footnote 8), Wisconsin courts have consistently held that "the decision to close the courthouse doors on litigants with stale claims is a pure question of policy that is better left to the legislative branch of government." *Tomczak v. Bailey*, 218 Wis. 2d 245, 254, 578 N.W.2d 166 (1998). Accordingly, Selzer's public policy arguments are unavailing here.

### III.

¶ 31. Selzer's strict responsibility and negligent misrepresentation claims remain for us to consider. Once again, the statement at issue is that contained in Marvin's product catalog: "all exterior wood is deep-treated to permanently protect against rot and decay." Selzer claims that this statement is a misrepresentation

of fact for which Marvin is liable in tort under the theories of strict responsibility and negligent misrepresentation.[10]

¶ 32. Strict responsibility and negligent misrepresentation claims share three common elements: (1) the representation must be of a fact and made by the defendant; (2) the representation of fact must be untrue; and (3) the plaintiff must have believed the representation and relied on it to his detriment. *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 25, 288 N.W.2d 95 (1980). The trial court dismissed Selzer's misrepresentation claims on the basis that the evidence he submitted (the architect's affidavit) provided insufficient evidence demonstrating the third element, reliance on the statement at issue. As we have explained (see ¶¶ 14–15), we disagree with the trial court's conclusion in this regard.

¶ 33. Nevertheless, we conclude that Selzer's misrepresentation claims are barred by the economic loss doctrine.[11] The economic loss doctrine recognizes that

---

[10] Unlike his warranty and false advertising claims, Selzer's misrepresentation claims did not accrue until he discovered or should have discovered his injury. *See* Wis. Stat. § 893.52; *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983) (discovery rule applies to "all tort actions other than those already governed by a legislatively created discovery rule"). Because the misrepresentation claims have a six-year statute of limitation and Selzer did not discover his injury until 1997, the claims were timely filed. *See* § 893.52.

[11] The Wisconsin Supreme Court has applied the economic loss doctrine to consumer transactions, and we have applied it to negligent and strict responsibility misrepresentation claims. *See State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis.

contracts and torts encompass distinct areas of law that are intended to resolve different types of claims, and the doctrine seeks to maintain this distinction. *See Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 403–04, 573 N.W.2d 842 (1998); *see also East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986) (economic loss doctrine seeks to avoid drowning contract law in "a sea of tort"). The rationale underlying the doctrine is that claims concerning strictly "economic" losses (damages suffered because a product does not perform as intended, including damage to the product itself or monetary loss caused by the defective product) are best governed by the contractual obligations between the parties. *See Daanen & Janssen, Inc.*, 216 Wis. 2d at 401–04. Allowing buyers and sellers to allocate the risk of these losses by contract promotes an efficient, predictable marketplace. *See id.* at 410–12. On the other hand, claims concerning personal injury or damage to property other than the product itself are best governed by tort law, an area of law intended to protect people from misfortunes that are unexpected and overwhelming. *See id.* at 405; *see also Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 248, 593 N.W.2d 445 (1999).

¶ 34. Applying the economic loss doctrine to the facts at hand, we conclude that Selzer may not recover in tort for the cost to repair or replace his rotting windows. These damages are purely economic losses: the windows were not as rot-resistant as Selzer claims to have expected them to be, and the failure caused damage to the windows themselves. Under the economic loss doctrine, the risk of this loss is precisely the risk that the parties allocated (or could have allo-

2d 305, 348, 592 N.W.2d 201 (1999); *Kailin v. Armstrong*, 2002 WI App 70, ¶ 31 n.20, 252 Wis. 2d 676, 643 N.W.2d 132.

cated) by contractual warranty provisions. Accordingly, Selzer may not recover in tort for damages measured in terms of the value of the allegedly defective windows or the cost of repairing or replacing them.

¶ 35. Selzer points out, however, that the rot on a number of his windows has spread beyond the windows to his siding, and thus he claims to have suffered "other property" damage that "preclud[es] the application of the economic loss doctrine." *See Wausau Tile, Inc.*, 226 Wis. 2d at 247 ("The economic loss doctrine does not preclude a product purchaser's claims of personal injury or damage to property other than the product itself."). We are not persuaded, however, that the "other property damage" exception to the economic loss doctrine applies on the present facts.

¶ 36. First, Wisconsin courts will not allow the "other property" exception to apply if, at bottom, the claim involves disappointed performance expectations. For example, in *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 475 N.W.2d 587 (Ct. App. 1991), a farmer's silo failed to be as "air-tight" as expected, which in turn allegedly damaged the feed inside of the silo, which in turn allegedly caused illness, death, and poor production and reproduction among the farmer's livestock. *Id.* at 326. Despite the fact that the farmer had alleged considerable damage beyond the costs to repair the silo, we held that this damage did not qualify as "other property" damage because all of the alleged damages stemmed directly from the failure of the silo to perform as expected. The damages were therefore properly recoverable in contract, not in tort. *Id.* at 328; *compare with Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.*, 151 Wis. 2d 431, 438, 444 N.W.2d 743 (Ct. App. 1989) ("other property" exception applied where chemical intended to prevent potato rot caused

potatoes to petrify; product did not simply fail to perform as expected, but damaged other property in an unanticipated manner compensable in tort).

¶ 37. We conclude that the present facts are analogous to those in *D'Huyvetter*. Selzer expected his windows to resist rot. They failed to do so, which in turn caused damage to the siding adjacent to the windows. A tort claim based on these losses stems directly from the failure of the windows to perform as expected. Because Selzer has not proved any harm beyond disappointed expectations, he is precluded from pursuing a recovery in tort. Had the windows resisted rot but spontaneously shattered, spewing shards of glass into an adjacent Picasso, Selzer might well argue that the defective windows damaged his painting in an entirely unanticipated manner, going well beyond a failure to perform as expected and entitling him to pursue a tort remedy.

¶ 38. A second reason why we conclude the "other property" exception does not apply is that the windows and siding were components of an "integrated system." The integrated system rule holds that once a part becomes integrated into a completed product or system, the entire product or system ceases to be "other property" for purposes of the economic loss doctrine. *See Wausau Tile, Inc.*, 226 Wis. 2d at 251–52 (cement was an integral part of concrete paving block; therefore damage to blocks caused by the cement was not "other property" damage); *Cincinnati Ins. Co. v. AM Int'l, Inc.*, 224 Wis. 2d 456, 463, 591 N.W.2d 869 (Ct. App. 1999) (gear was an integral part of printing press; therefore damage to press caused by the gear was not "other property" damage); *Midwhey Powder Co., Inc. v. Clayton Indus.*, 157 Wis. 2d 585, 590–91, 460 N.W.2d 426 (Ct.

App. 1990) (steam generator connected to turbine was an integral part of turbine; therefore damage to turbine caused by generator was not "other property" damage); *Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft,* 849 F. Supp. 666, 672 (E.D. Wis. 1994), *aff'd,* 42 F.3d 1391 (7th Cir. 1994) (tail rotor drive system was an integral part of helicopter; therefore destruction of helicopter caused by drive system was not "other property" damage).

¶ 39. We conclude that the "integrated system" rule applies in this case. We cannot discern a meaningful analytical difference between a window in a house, a gear in a printing press, a generator connected to a turbine, or a drive system in a helicopter. In each of these examples, the window, the gear, the generator, and the drive system are integral parts of a greater whole; none of the integral parts serve an independent purpose. Thus, just as the damage to the printing press, the turbine, and the helicopter caused by their integral parts constituted damage to the products themselves, so too did the damage to Selzer's home caused by the windows constitute damage to the product itself, and not damage to "other property" for purposes of the economic loss doctrine. *See Bay Breeze Condo. Ass'n v. Norco Windows, Inc.,* 2002 WI App 205, ¶ 27, No. 01–2689 (concluding that "windows are simply a part of a single system or structure, having no function apart from the buildings for which they were manufactured," and thus the economic loss doctrine prevents recovery in tort for damage to adjacent walls and casements).[12]

---

[12] Several other jurisdictions have reached similar conclusions. *See Wausau Tile, Inc. v. County Concrete Corp.,* 226 Wis. 2d 235, 251 n.9, 593 N.W.2d 445 (1999) (noting that the "the jurisprudence of other state and federal courts have guided the development of the economic loss doctrine in Wisconsin since its

¶ 40. Accordingly, we conclude that Selzer's misrepresentation claims are barred by the economic loss doctrine.

## CONCLUSION

¶ 41. For the reasons discussed above, we affirm the appealed judgment dismissing all of Selzer's claims against Marvin.

*By the Court.*—Judgment affirmed.

inception"); *Wilson v. Dryvit Sys., Inc.,* 206 F. Supp. 2d 749, 753–54 (E.D.N.C. 2002) (exterior cladding was integral part of house; therefore moisture intrusion, probable deterioration of sheathing, and rotting of framing, doors, windows, and subflooring caused by allegedly defective exterior cladding was not "other property" damage); *Calloway v. City of Reno,* 993 P.2d 1259, 1267–69 (Nev. 2000) (framing was integral part of townhouses; therefore wood decay and damage to flooring and ceilings caused by allegedly defective framing was not "other property" damage).