James A. Billington and Patricia A. Billington, Plaintiffs,
v.
Wilbert C. Oldenhoff, American Standard Insurance Company of Wisconsin, and Network Health Plan of Wisconsin, Inc., Defendants,
Allstate Insurance Company, Defendant-Respondent,
General Casualty Company of Wisconsin, Defendant-Appellant.
No. 03-2663.
Court of Appeals of Wisconsin.
Opinion Filed: February 10, 2005.
Before Dykman, Lundsten and Higginbotham, JJ.
¶1 HIGGINBOTHAM, J.
General Casualty Company of Wisconsin appeals an order granting summary judgment to Allstate Insurance Company concluding that General Casualty's uninsured motorist (UM) coverage provided primary coverage and the excess UM coverage of Allstate's policy remained untriggered. General Casualty argues that 1995 anti-stacking legislation changed the primary-versus-excess landscape of UM coverage and that, in order to give reasonable meaning to every provision of General Casualty's policy, General Casualty and Allstate should each provide $50,000 of UM coverage. We disagree and affirm the judgment of the circuit court.

FACTS
¶2 The relevant facts are undisputed. Plaintiff James Billington was a passenger in a car owned and operated by Steven Behm when Behm was involved in an accident caused by the negligence of Wilbert C. Oldenhoff. At the time of the accident, Oldenhoff was uninsured. Behm's vehicle was insured by General Casualty and provided UM coverage in the amount of $100,000. As an occupant of Behm's vehicle, Billington was an "insured" for uninsured motor vehicle coverage purposes under General Casualty's policy. General Casualty's policy provides, in relevant part, as follows:
OTHER INSURANCE
If there is other applicable insurance available under more than one policy or provision of coverage:
1. Any recovery for damages for "bodily injury" sustained by an "insured" may equal but not exceed the highest applicable limit for any one vehicle under this insurance or any other insurance.
2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.
3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.
¶3 Billington also had UM coverage, through an auto policy issued by Allstate, in the amount of $100,000. Allstate's policy provides, in relevant part:
If There Is Other Insurance
....
If the insured person was in, on, getting into or out of a vehicle you do not own which is insured for this coverage under another policy, we will pay up to your policy limits only after all other collectible insurance has been exhausted.
¶4 Billington sued both General Casualty and Allstate seeking UM benefits as a result of the injuries he sustained in the car accident. At mediation, Billington, General Casualty and Allstate stipulated neither insurer would be required to pay more than $100,000.[1] The stipulation reads:
The parties have stipulated to the following damages and this stipulation may be entered by the Court with the understanding that the defendants Allstate Insurance Company and General Casualty Company will move the Court for an order to determine their liability for a portion of these damages totaling $100,000.00 under the UM coverage. Neither Allstate or [sic] General Casualty will be required to pay more than $100,000.00 between the two companies.
Accordingly, the only disputed issue before the circuit court was how the $100,000 should be apportioned between General Casualty and Allstate.
¶5 Allstate sought declaratory judgment, asking the circuit court to dismiss all claims against it because General Casualty's policy was primary and fully satisfied Billington's stipulated $100,000 damages and consequently Allstate's excess coverage was not triggered. General Casualty asked the circuit court to add both coverages and then pro rate General Casualty's exposure based on application of the proration clause in its policy.
¶6 The circuit court concluded that the UM coverage under Allstate's policy was not triggered because General Casualty's policy provided primary coverage in the amount of $100,000, which fully satisfied Billington's stipulated damages and rejected General Casualty's argument that WIS. STAT. § 632.32(5)(f) changed the law governing primary and excess coverage. General Casualty appeals.

DISCUSSION
¶7 We review a circuit court's grant or denial of summary judgment de novo, owing no deference to the circuit court's decision. Selzer v. Brunsell Bros., Ltd., 2002 WI App 232, ¶10, 257 Wis. 2d 809, 652 N.W.2d 806. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.; see also WIS. STAT. § 802.08(2). We will reverse a decision granting summary judgment if either (1) the circuit court incorrectly decided legal issues or (2) material facts are in dispute. Selzer, 2002 WI App 232, ¶10. In this case we are required to interpret WIS. STAT. § 632.32 governing UM coverage, and the two insurance contracts, to determine which policy has priority in providing UM coverage. These are also questions of law we review de novo. Clark v. American Family Mut. Ins. Co., 218 Wis. 2d 169, 173, 577 N.W.2d 790 (1998); see also Folkman v. Quamme, 2003 WI 116, ¶12, 264 Wis. 2d 617, 665 N.W.2d 857.
¶8 There is no dispute that General Casualty provides primary UM coverage and Allstate's coverage is excess.[2] The sole issue in this case is whether General Casualty is entirely liable under its policy for amounts paid to Billington as a result of the settlement or whether both insurance companies are responsible on a prorata basis under the "other insurance" clauses in their respective policies. We conclude Allstate's excess clause controls over General Casualty's proration clause, thereby requiring us to treat Allstate's excess coverage as if it were not available to Billington. Accordingly, General Casualty is responsible for the policy limits of $100,000.
¶9 General Casualty concedes that prior to 1995, the well-settled rule governing cases such as this one provided that where a proration clause of one insurance policy conflicts with an excess clause of another insurance policy, the excess policy controls. See Groth v. Farmers Mut. Auto. Ins. Co., 21 Wis. 2d 655, 660, 124 N.W.2d 606 (1963). Thus, under this rule, General Casualty would be responsible for the entire $100,000 payment to Billington. However, General Casualty argues that this rule should be reconsidered in light of the creation of WIS. STAT. § 632.32(5)(f), the 1995 legislation permitting insurance companies to include policy language limiting stacking of insurance policies. WIS. STAT. § 632.32(5)(f) provides
A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.
¶10 At the time Groth was decided, which was prior to the enactment of WIS. STAT. § 632.32(5)(f), WIS. STAT. § 631.43(1) (1975)[3] prohibited insurers from including language in their policies limiting stacking of insurance policy coverage. See Landvatter v. Globe Security Insurance Co., 100 Wis. 2d 21, 26, 300 N.W.2d 875 (Ct. App. 1980). In 1995, § 631.43[4] was amended, as part of the significant changes in the law regarding stacking of insurance policy coverage, expressly excepting application of § 631.43(1) from affecting the rights of insurers to limit stacking in their policies under § 632.32(5)(f). General Casualty asserts that because the legislature enacted § 632.32(5)(f), which we note applies strictly to automobile insurers, we are now required to give effect to the proration clause in its policy, although Allstate's policy is excess. General Casualty's argument is confusing and ultimately fails.
¶11 As noted above, General Casualty asserts we should revisit the common law governing the relationship between proration and excess clauses in competing auto insurance policies because the legislature enacted WIS. STAT. § 632.32(5)(f), which permits insurers to limit stacking in their policies. General Casualty contends there is a connection between the ability of insureds, prior to 1995, to stack insurance policies (the rule articulated in Groth), and the fact that insurers are now permitted by § 632.32(5)(f) to provide policy language limiting stacking. The problem with this argument is that General Casualty fails to make that connection. General Casualty does not explain what, if any, part of the court's reasoning in Groth relied on the ability of insureds to stack insurance policies in fashioning the rule at issue here. Similarly, General Casualty fails to point to any language in § 632.32(5)(f) that relates to determining the priority of insurance coverage or is somehow germane to the resolution of this case. We fail to find any language in Groth or in § 632.32(5)(f) that supports General Casualty's arguments.
¶12 In Groth, as here, the issue was whether either Milwaukee Automobile Mutual Insurance Company or United States Fidelity & Guaranty was solely responsible under their policies for amounts paid in settlement to two plaintiffs injured in auto accidents or whether each company must bear a prorata share of the settlement under the "other insurance" clauses of the two policies. Groth, 21 Wis. 2d at 657. Concluding that United States Fidelity & Guaranty's excess clause controlled, the Wisconsin Supreme Court said:
Inasmuch as the excess-coverage provision of the U.S.F.&G. policy conflicts with the proration provision of the "other insurance" clause of the Milwaukee Auto policy, the former controls and Milwaukee Auto is not entitled to be reimbursed from U.S.F.&G. for any moneys it paid in settlement to the two plaintiffs. This court in Lubow v. Morrissey, 13 Wis. 2d 114, 123, 108 N.W.2d 156 (1961), determined that where there is a conflict between the proration clause of one policy and the excess-coverage clause of another policy, the conflict is resolved by holding that the proration clause must be applied as if the insurance provided by the policy, whose excess-coverage clause is applicable, were not available to the insured.
Groth, 21 Wis. 2d at 660.
¶13 The Groth court was principally concerned with the priority of insurance coverage, where one policy contained a proration clause and another policy contained an excess clause. There is nothing in Groth that informs us that the court's decision relied on the ability of insureds to stack insurance policies and why the change in legislation permitting the limiting of stacking in insurance coverage should affect the court's conclusions.
¶14 Similarly, the plain language of WIS. STAT. § 632.32(5)(f) draws no connection between stacking insurance policies and how a court is to determine which policy controls. Section 632.32(5)(f) permits insurers to limit multiple policies from being added together to determine the amount of coverage available to an insured. It has nothing to do with determining the priority of coverage between insurance policies. Furthermore, statutes are not to be construed as changing the common law unless the purpose to effectuate such change is clearly expressed in the statute. See Burke v. Milwaukee & Suburban Transp. Corp., 39 Wis. 2d 682, 690, 159, N.W.2d 700 (1968). If the change in the common law is intended, the language of the statute must be clear, unambiguous and peremptory. Id. We conclude General Casualty has not shown there is anything in § 632.32(5)(f) clearly suggesting the legislature intended to change the common law governing the priority of coverage between primary and excess insurance policies.
¶15 We conclude the rule set forth in Groth governing the interaction of excess clauses and proration clauses in auto insurance policies maintains its vitality and applies to the facts of this case. General Casualty is the primary insurer; the "other insurance" provision in the policy at issue here contains a proration clause. Allstate's policy provides excess UM coverage. As such, in accordance with Groth, Allstate's policy controls and we give effect to the excess clause over General Casualty's proration clause. General Casualty is therefore solely liable to Billington for the entire $100,000 settlement and we affirm the judgment of the circuit court.
By the Court.  Judgment affirmed.
NOTES
[1] In their briefs, General Casualty and Allstate state this stipulation was based on the clear and plain language of their insurance policies, whereby each policy contains $100,000 policy limits for UM coverage, and that in accordance with WIS. STAT. § 632.32(5)(f) (2003-04), the most Billington is permitted to recover from both policies is $100,000. WISCONSIN STAT. § 632.32(5)(f) permits insurers to limit an insured's recovery to the highest single available policy limit. Here, the highest single available limit under both policies is $100,000.

All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] General Casualty and Allstate stipulated that General Casualty's policy was primary and Allstate's policy was excess.
[3] WISCONSIN STAT. § 631.43(1) (1975) provides:

GENERAL. When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.
[4] WISCONSIN STAT. § 631.43(3) (1996-96) was created and reads as follows:

EXCEPTION. Subsection (1) does not affect the rights of insurers to exclude, limit or reduce coverage under s. 632.32(5)(b), (c) or (f) to (j).