In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 16-3563 & 16-3648

MARY HALEY, *et al.*,

*Plaintiffs,*

*v.*

KOLBE & KOLBE MILLWORK CO.,

*Defendant-Appellant/Cross-Appellee,*

and

FIREMAN'S FUND INSURANCE CO.,

*Intervenor-Appellee,*

and

UNITED STATES FIRE INSURANCE CO.,

*Intervenor-Appellee/Cross-Appellant.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 14-cv-99-bbc — **Barbara B. Crabb**, *Judge.*

_____

ARGUED MARCH 28, 2017 — DECIDED AUGUST 8, 2017

_____

Before FLAUM, KANNE, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge*. In 2014, Mary Haley and others filed a putative class action against Kolbe & Kolbe Millwork Company, claiming that windows purchased from Kolbe were defective and had allowed air and water to leak into (and damage) the plaintiffs' homes. Kolbe tendered the defense of the defective-product claims to several insurance companies, and two of them—United States Fire Insurance Company and Fireman's Fund Insurance Company—sought and obtained permission to intervene in the case. United States Fire later filed a motion for summary judgment, arguing that a recent decision of the Wisconsin Supreme Court, *Wisconsin Pharmacal Co., LLC v. Nebraska Cultures of California, Inc.*, 876 N.W.2d 72 (Wis. 2016), absolved the insurers of their duty to defend Kolbe in the underlying suit. The district court granted United States Fire's motion (and *sua sponte* awarded judgment to Fireman's Fund)—a decision that Kolbe now appeals. United States Fire appeals the court's decision not to require Kolbe to reimburse that insurer for any post-*Pharmacal* defense fees, and asks that we remand the case for a determination of whether all pre-*Pharmacal* defense fees were reasonable. We reverse the judgment that the insurance companies had no duty to defend, but otherwise affirm the decisions of the district court.

## I. Background

Plaintiffs in the companion case of *Haley v. Kolbe & Kolbe Millwork Co.*, No. 16-3192, — F.3d —, 2017 WL 2953042 (7th Cir. Jul. 11, 2017), alleged two general categories of damages suffered as a result of defects in Kolbe's window products: "direct" losses (*i.e.*, from having to replace the windows), and indirect or "consequential" losses from injuries to the plaintiffs' homes (such as stained walls and buckled plaster). Kolbe

tendered the defense of these claims to four of its insurance providers, and all four agreed to defend Kolbe under a reservation of rights.

When a dispute arose over the choice of defense counsel, however, two of the insurance companies—United States Fire and Fireman's Fund—sought to intervene in the underlying suit, and to compel Kolbe to switch defense lawyers. The same insurers also moved to bifurcate the insurance-coverage and liability issues, and to stay the liability portion of the case until the choice-of-counsel issue had been resolved. The district court permitted intervention but declined to stay the underlying litigation, and held that the insurers were equitably estopped from forcing Kolbe to change defense attorneys.

The intervening insurers ultimately moved for summary judgment, arguing that they had no duty to defend Kolbe because there was no coverage for the plaintiffs' defective-window claims. Kolbe's insurance policies did not cover the "direct" cost of replacing any faulty windows, said the insurers, because the policies did not cover damage to Kolbe's own product where, as here, the source of the damage was a problem with that product itself; and the policies likewise did not apply to any indirect or "consequential" injuries to the plaintiffs' homes, argued the insurers, because each home formed an "integrated system" with Kolbe's windows—and thus the entire house should be treated as Kolbe's "product" for insurance-coverage purposes. The district court accepted the first of these arguments but rejected the second, and so initially awarded judgment to the insurance companies only in part.

The district court changed course on the integrated-system issue, however, when United States Fire renewed its motion for summary judgment in light of the Wisconsin Supreme

Court's decision in *Wisconsin Pharmacal Co., LLC v. Nebraska Cultures of California, Inc.*, 876 N.W.2d 72 (Wis. 2016). The court then entered judgment for United States Fire and, *sua sponte,* for Fireman's Fund (which had neglected to join United States Fire's second motion but whose policy contained similar language), concluding that neither policy covered the plaintiffs' consequential-damages claims. United States Fire also sought reimbursement of any defense fees incurred since *Pharmacal* had been decided, but the district court denied that request, concluding that United States Fire had forfeited the reimbursement issue generally by failing to raise it earlier in the litigation.

Kolbe now appeals the district court's ruling that the insurers had no duty to continue defending Kolbe in the underlying leaky-windows suit. United States Fire appeals the court's refusal to compel reimbursement of any post-*Pharmacal* defense fees, and seeks a remand to the district court for a determination of whether the other fees charged by Kolbe's defense counsel were reasonable.

## II. Discussion

### A. Kolbe's Appeal

We review de novo a district court's grant of summary judgment, construing all facts and drawing all reasonable inferences in favor of the non-moving party—here, Kolbe. *Cohan v. Medline Indus., Inc.*, 843 F.3d 660, 665 (7th Cir. 2016) (citation omitted). Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### 1. *"Integrated Systems" and the Economic-Loss Doctrine*

At the heart of the parties' dispute over insurance coverage here is the integrated-system rule, a common-law rule from the so-called "economic loss" doctrine. Under that doctrine, the purchaser of a product is barred from using tort law to recover from the manufacturer any purely economic injuries (such as a loss of the product's value) arising from that product's failure to work as expected. *See Linden v. Cascade Stone Co.*, 699 N.W.2d 189, 192 (Wis. 2005) (citations omitted); *Wausau Tile, Inc. v. Cty. Concrete Corp.*, 593 N.W.2d 445, 451 (Wis. 1999) (citations omitted).[1] By eliminating all tort-based avenues of recovery (which in general offer "a broader array of damages" than do contract suits, *Grams v. Milk Prods., Inc.*, 699 N.W.2d 167, 171 (Wis. 2005) (citation and internal quotation marks omitted)), the doctrine encourages the buyer in a commercial transaction—the party "best situated to assess the risk[s] of economic loss"—to allocate those risks through the bargaining process, *Linden*, 699 N.W.2d at 194–95 (quoting *Wausau Tile*, 593 N.W.2d at 451), and thus helps to protect the manufacturer's ability to continue making its goods, *see Grams*, 699 N.W.2d at 172 ("With no ability to share their risk with commercial users of the product, manufacturers would … be reluctant to produce certain products.") (citation omitted).

As its name suggests, the economic-loss doctrine applies only to economic injuries, and so does not preclude actions in tort for bodily injuries or for injuries to property other than the defective product. *See Wausau Tile*, 593 N.W.2d at 451 (citations omitted). But there's a catch: If the defective product is

---

[1] The parties agree that Wisconsin law governs their dispute.

a component of a larger, "integrated system," damage by that component to the other elements of the system, or to the system as a whole, is likewise considered damage to the defective component itself, and so does not qualify as damage to "other property." *See id.* at 452 (citations omitted). Thus, in *Wausau Tile*, the Wisconsin Supreme Court held that a manufacturer and seller of concrete paving blocks could not maintain any tort-based claims against its cement supplier after the cement—an ingredient of concrete—had allegedly caused the paving blocks to crack and buckle. As the cement was an integral component of the finished blocks, the cement had not damaged any "other property," and the economic-loss doctrine applied. *See id.* at 453–54.

### 2. *The* Pharmacal *Decision*

The economic-loss doctrine generally does not apply to insurance-coverage disputes, *see Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 75 (Wis. 2004) (citation omitted), but in 2016, the Wisconsin Supreme Court extended *Wausau Tile*'s integrated-system analysis to an insurance case involving a general-liability policy similar to the ones at issue here. The plaintiff in *Pharmacal*, a retail supplier of dietary supplements, agreed to purchase from a supplement manufacturer probiotic pills containing a certain species of bacteria. *See* 876 N.W.2d 72, 76. The manufacturer sourced the ingredients from another company—which in turn procured the bacterial component from a separate supplier—before blending the ingredients together and compressing the mixture into chewable tablets. *See id.* As it turned out, however, the bacteria incorporated into the tablets was the wrong one, and the retailer was forced to recall the finished pills. *See id.* Litigation ensued, and the bacteria supplier's insurance company moved for

summary judgment on the issue of coverage. *See id.* at 77. The trial court agreed with the insurer that there was no coverage because there had been no "property damage" within the meaning of relevant insurance policy. *See id.* The court of appeals reversed, and the Wisconsin Supreme Court granted review. *See id.*

The supreme court began its analysis by reiterating the general procedure for determining whether coverage exists under an insurance policy: First, the court examines the facts of the insured's claim to determine if there is an "initial grant" of coverage—that is, if the policy generally covers the category of loss at issue; if so, the court examines the policy for any exclusions that may preclude coverage; and if an exclusion applies, the court determines whether any exceptions to that exclusion operate to restore coverage. *See id.* at 79 (citing *Preisler v. Gen. Cas. Ins. Co.*, 857 N.W.2d 136, 143 (Wis. 2014)). The policy in *Pharmacal*, like the policies here, required the insurance company to cover any losses that the insured became obligated to pay "as damages because of … property damage," where "property damage" was defined to include "[p]hysical injury to tangible property." *Id.* (internal quotation marks omitted). The court observed that it had previously interpreted this definition to describe only those injuries to property *other than [the insured's] product … itself*," *id.* (quoting *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 607 N.W.2d 276, 283 (Wis. 2000)). So the court asked whether the incorporation of the wrong bacteria into the supplement tablets constituted physical injury to tangible property "other than" the bacterial component. *See id.* at 80. To answer that question in *Pharmacal*, the court borrowed from its integrated-system analysis in *Wausau Tile*, explaining that such an analysis was necessary because, if the supplement tablet were an

integrated system, then damage to the system would constitute damage only to the defective element. *See id.* (citing *Wausau Tile*, 593 N.W.2d at 452). The court held that mixing a probiotic ingredient together with other ingredients, and combining the whole into a single tablet, did indeed create an integrated system, as the various components could not be "separate[d] out" from the larger product. *Id.* at 82. Thus, the injury claimed—the inability to use the finished tablets—was not one of damage to "other property," and there was no initial grant of coverage. *Id*. at 82–83.

### 3.  *Coverage in the Suit Against Kolbe*

The insurance companies here read *Pharmacal* as mandating an integrated-system analysis in (and as importing the entirety of Wisconsin's integrated-system case law into) all general-liability insurance disputes. *Pharmacal* therefore dictates that there is no initial grant of coverage in this case, argue the insurers, because the Wisconsin Court of Appeals has otherwise held (under the economic-loss doctrine) that the windows of a house have no function or purpose apart from—and thus form an "integrated system" with—their surrounding structures, *see Bay Breeze Condo. Ass'n. v. Norco Windows, Inc.*, 651 N.W.2d 738, 746 (Wis. Ct. App. 2002) (citations omitted); *Selzer v. Brunsell Bros.*, 652 N.W.2d 806, 835 (Wis. Ct. App. 2002) (citing *Bay Breeze*, 651 N.W.2d at 746). Damage to those structures, caused by a defect in the windows, therefore counts as damage to the windows themselves; and, absent any injury to "other" property, no insurance coverage obtains—or so the argument goes. In our view, this argument stretches *Pharmacal* beyond its intended reach.

Whether an insurance policy covers a particular claim depends on the nature of the plaintiff's (alleged) loss. In *Pharmacal*, the only loss alleged—and thus the only basis for the underlying suit—was the plaintiff's inability to use the supplement tablets *as a whole*. *See* 876 N.W.2d at 76. The plaintiff in that case did not seek reimbursement for the cost of repairing or replacing the tablets' non-defective *ingredients*—presumably because, even if there had been evidence of physical injury to those components (and there was none, *see id.* at 82), the components were indistinguishable from each other and from the larger product, *see id.* Not so here. Here, the homeowners sought compensation for the repair or replacement of individual elements of a larger structure. This kind of particularized demand was not at issue in *Pharmacal*. Accordingly, we do not read *Pharmacal* as requiring an integrated-system analysis in this case.[2]

Kolbe's insurers next assert that, even if the policies here afford an initial grant of coverage for the plaintiffs' leaky-window claims, the "your product" exclusion operates to remove any such coverage. We interpret the exclusion as would a reasonable person in the position of the insured. *See Water Well*

---

[2] Kolbe requests (in the alternative) that we certify to the Wisconsin Supreme Court several questions concerning the application of *Pharmacal* to cases like this one. *See* Cir. R. 52(a); Wis. Stat. § 821.01. In general, certification is appropriate where the relevant issue is one of "vital public concern" and is likely to recur in other suits, where resolution of that issue is dispositive of the present action, and where the state supreme court has not yet had an opportunity to "illuminate a clear path" forward. *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 514 F.3d 651, 659 (7th Cir. 2008) (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 639 n.18 (7th Cir. 2002)). We do not see a need for certification here, as we think it sufficiently clear that *Pharmacal*'s integrated-system approach does not govern in this dispute.

*Sols. Serv. Grp., Inc. v. Consol. Ins. Co.*, 881 N.W.2d 285, 291 (Wis. 2016) (citations omitted); *Fontana Builders, Inc. v. Assurance Co. of Am.*, 882 N.W.2d 398, 408 (Wis. 2016) (citation omitted). Unambiguous terms are given their common and ordinary meaning, while ambiguous terms are construed in favor of coverage. *See Fontana*, 882 N.W.2d at 408 (citation omitted); *Am. Girl*, 673 N.W.2d at 73 ("Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain.") (citation omitted).

The United States Fire policy excludes from coverage any "'[p]roperty damage' to 'your product' arising out of it or any part of it," where "your product" is defined as:

> (1) Any goods or products … manufactured, sold, handled, distributed or disposed of by:
>
>> (a) You [the insured];
>>
>> (b) Others trading under your name; or
>>
>> (c) A person or organization whose business or assets you have acquired; and
>
> (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.[3]

The Fireman's Fund policy is largely identical, except it defines the insured's "product" as "[a]ny goods or products,

---

[3] The insured's "product" also includes: "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of [the insured's product]," and the "providing of or failure to provided [*sic*] warnings or instructions." (internal quotation marks omitted).

*other than real property*, manufactured, sold, handled, distributed or disposed of by" Kolbe (along with any containers, etc., "furnished in connection with" those goods or products) (emphasis added).

The parties agree that Kolbe's windows, which Kolbe manufactured, are Kolbe's "goods or products" under the first part of the definition—so Kolbe's insurers are not on the hook for the cost of replacing any windows that are defective (or, relatedly, for any losses stemming from replacement operations). The parties disagree, however, as to whether the walls and other elements of the plaintiffs' homes constitute Kolbe's "product" under the second part of the definition, such that coverage for any damage to those materials is likewise extinguished by the exclusion. Kolbe says not, because Kolbe did not "furnish" any of the drywall, wood framing, stucco, or bricks at issue. The insurance companies argue that, unlike the first part of the "your product" definition—which explicitly limits Kolbe's "product" to goods or products made or sold, etc., *by the insured*—the second paragraph contains no such limitation, looping in all materials that have simply been "furnished in connection with such goods or products."

We agree with Kolbe that a reasonable insured could understand "furnished in connection with," as that phrase is used in the second part of the "your product" definition, to mean furnished by the actors specified in the preceding clause—here, Kolbe (the insured). "In connection with" is a phrasal preposition that, like other prepositions, is used to indicate a relationship between an object and its antecedent. The particular relationship signaled, however, may differ depending on the context in which the preposition appears. When a journalist reports that "a man was questioned in connection

with a robbery," for instance, we understand "in connection with" to mean "concerning" or "regarding." But if someone tells us that "these chairs were purchased in connection with the table," the "connection" has changed: Now we understand that the chairs were purchased "together with," or "around the same time as and for reasons related to the purchase of" the table—and, importantly, that the former items were purchased by the same person, or at least by someone acting in agreement with the person, who bought the latter.

Kolbe's insurance policies define Kolbe's "product" as (1) "goods or products … manufactured, sold, handled, distributed or disposed of by" Kolbe, and (2) "[c]ontainers …, materials, parts or equipment furnished in connection with such goods or products." An insured could understand "in connection with," as it is used here, to have the same meaning as it did in our table-and-chairs example above. Because both the "containers" *et al.* and the "goods or products" are capable of being "furnished" or supplied, the reader could reasonably assume that the former items must come from the source of, or from someone acting in agreement with the source of, the latter items; and the first clause clearly identifies that source as the insured. *Cf. Pharmacal*, 876 N.W.2d at 80 ("[T]he insured risk (i.e., physical injury to tangible property) applies to physical injury to tangible property other than … the product … *the insured* supplied." (citing *Vogel v. Russo*, 613 N.W.2d 177, 182 (Wis. 2000), *abrogated in part on other grounds by Ins. Co. of N. Am. v. Cease Elec., Inc.*, 688 N.W.2d 462 (Wis. 2004))) (emphasis added); *Am. Girl*, 673 N.W.2d at 78 ("The business risk exclusions eliminate coverage for … property damage to the insured's *own* … product ….") (emphasis added). At the very least, the definition of "your product" is ambiguous, so we

must construe the "your product" exclusion in favor of cover-age. *Am. Girl*, 673 N.W.2d at 73. As Kolbe did not supply or request that anyone else supply the drywall and other mate-rials allegedly damaged in the plaintiffs' homes, the damage, though arising from Kolbe's "product," was not also *to* that "product"—so the "your product" exclusion does not elimi-nate coverage for these claims.[4]

Where, as here, it appears that there may be coverage for at least one of the claims in an underlying suit, the insurer has a duty to defend the policyholder against all claims alleged in that suit. *Water Well*, 881 N.W.2d at 292 (citing *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 660 N.W.2d 666, 674 (Wis. 2003)). We therefore reverse the judgment declaring that United States Fire and Fireman's Fund had no duty to defend in this case, and remand with instructions to vacate that judg-ment.

## B. United States Fire's Cross-Appeal

While United States Fire's (renewed) motion for summary judgment on the duty-to-defend issue was still pending in the district court, the court dismissed all of the plaintiffs' remain-ing claims in the underlying suit and ordered the insurance company to show cause why, in light of that dismissal, the pending motion should not be denied as moot. United States Fire responded that the motion should still be resolved be-cause, in the event the plaintiffs filed an appeal, the insurers would have a continuing duty to defend Kolbe throughout

---

[4] We note, however, that if the integrated-system rule applied in this case as it did in *Pharmacal*, then the "your product" exclusion would in-deed extinguish coverage, as the insurance companies urge. *See* 876 N.W.2d at 90 n.14.

the appellate process unless the district court decided otherwise. In addition, should the court determine that the duty to defend had been extinguished, United States Fire asked that the court order Kolbe to reimburse its insurer for all monies paid toward Kolbe's defense since the duty had ended. The insurance company also suggested that it planned to challenge the reasonableness of the defense fees already charged by Kolbe's counsel. Although the district court agreed with United States Fire that the insurers no longer had a duty to defend, the court declined to order the reimbursement of any fees, as United States Fire had not asked for that kind of relief in its pleading, and it was too late in the litigation to allow an amendment. The court then entered judgment in the insurers' favor on their duty-to-defend claims, and terminated the case.

United States Fire appeals the denial of its request for reimbursement, but as we have concluded that the insurer owed a continuing duty to defend, we do not reach that issue: It is moot. As to the reasonableness of Kolbe's defense fees generally, the insurance company never made a formal request for the recoupment of excessive charges. Having resolved all outstanding motions and causes of action, it was not inappropriate for the district court to terminate the case. If, on remand, the district court wishes to entertain a motion for recoupment, however, the court certainly has the discretion to do so.

### III. Conclusion

For the foregoing reasons, we REVERSE the judgment that the insurance companies did not have a duty to defend and REMAND with instructions to vacate that judgment. We AFFIRM as to the reimbursement of defense fees and initial termination of the case.